STATE *vs.* CHARLES B. NAYLOR.

1. CRIMINAL LAW—NEW TRIAL—DISQUALIFICATION OF JUROR—FORMATION AND EXPRESSION OF OPINION.

A remark by a juror, prior to a trial for homicide, that he thought accused had gotten himself in a pretty bad hole, and that from what he could hear he

killed the boy all right, did not show such formation and expression of an opinion as to accused's guilt as required a new trial, where he testified on his *voir dire* that he had not formed and expressed an opinion.

**2.  CRIMINAL LAW—EVIDENCE—CHARACTER OF ACCUSED.**

Evidence as to the good or bad character of a person charged with crime must be confined to the time preceding the commission of the crime charged, and a witness may not testify to matters coming to his knowledge after the commission of the crime.

**3.  WITNESSES—CROSS-EXAMINATION—CHARACTER OF WITNESSES.**

A person testifying to the good character of accused is liable to cross-examination, not for the purpose of discrediting accused, or disproving his good reputation or character by proof of specific acts, but to test the accuracy and candor of the witness.

**4.  CRIMINAL LAW—MOTIONS FOR NEW TRIAL—HARMLESS ERROR.**

If it was error to permit the state to show on the cross-examination of a character witness produced by accused, that the witness, since the commission of the crime charged, had heard persons say that accused threatened to shoot other persons before the homicide, it was harmless, where the state for the purpose of showing malice, had proved the same threats.

**5.  CRIMINAL LAW—NEW TRIAL—NEWLY DISCOVERED EVIDENCE.**

Where, on a trial for homicide committed with a rifle fired from a distance of over eight hundred feet, there was evidence for the state tending to show that accused's rifle would carry a bullet that distance, that accused knew of such carrying power, and that he could use the rifle very effectively in shooting at an object more than three hundred yards distant, and defendant furnished practically all the testimony in his behalf on these points, corroborated only by expert witnesses as to the carrying power of the rifle, a new trial should be granted, to enable him to produce a witness who would, give material testimony on these points, as it would not be cumulative, within the rule that newly discovered evidence, forming the basis of a motion for new trial, must not be cumulative, and its effect would not be merely to impeach or contradict other witnesses, but possibly to disprove the testimony of the state on material and vital points.

**6.  CRIMINAL LAW—NEW TRIAL—NEWLY DISCOVERED EVIDENCE.**

Where, on a motion for a new trial on the ground of newly discovered evidence, accused's affidavit that the fact that the witness could furnish such evidence was not known to him at the time of the trial, and that, had it been known, the attendance of the witness could not have been procured, because he was sick and physically unable to attend the trial, was not controverted, a new trial would not be denied for lack of diligence.

**7.  CRIMINAL LAW—MOTIONS FOR NEW TRIAL—VACATION—FILING AFFIDAVITS.**

A motion to vacate an order granting a new trial for newly discovered evidence, on the ground that the witness who was expected to give such evidence had died, was not an application for a rehearing or a renewal of the matter previously decided, and the Attorney General should be allowed to file an affidavit in support of the motion, especially where no objection was made to the motion itself. ·

**8. CRIMINAL LAW—MOTIONS FOR NEW TRIAL—VACATION—GROUNDS.**

An order setting aside a verdict and granting a new trial for newly discovered evidence would not be vacated, on the ground that the witness who expected to give such evidence had died, where it did not appear that the order was made mistakenly or inadvertently.

**9. CRIMINAL LAW—NEW TRIAL—SCOPE OF INQUIRY.**

Where a person, convicted of murder in the second degree under an indictment for murder in the first degree, obtained a new trial, he could be tried again under the indictment, though he could not be convicted of murder in the first degree.

**10. CRIMINAL LAW—PLEAS—WITHDRAWAL—DISCRETION.**

Where a person, convicted of murder in the second degree under an indictment for murder in the first degree, obtained a new trial, a motion for leave to withdraw his plea of not guilty, in order to interpose a plea of former acquittal of murder in the first degree and a motion to quash the indictment, was addressed to the discretion of the court, and might be denied, where accused's rights could be protected by an instruction on the new trial that he could not be convicted of murder in the first degree.

**11. JURY—PEREMPTORY CHALLENGES—NUMBER.**

The provision of *Rev. Code* 1852, amended to 1893, *p.* 979, *c.* 133, § 16, that a person, indicted for a crime punishable with death, may challenge twenty jurors peremptorily, and that the state on the trial of such indictment may challenge peremptorily ten jurors, applies to a new trial obtained by a person convicted of murder in the second degree under an indictment for murder in the first degree.

**12. JURY—EXAMINATION OF JURORS—STATUTORY PROVISIONS.**

17 *Del. Laws*, *c.* 221, providing that, when a juror is called in a capital case, he shall be sworn or affirmed upon the *voir dire* and asked if he has formed and expressed an opinion in regard to the prisoner's guilt, that if his answer be in the negative he shall be sworn, unless otherwise challenged or excused, and that, if his answer be in the affirmative, he shall be disqualified unless he shall say upon his oath or affirmation to the court's satisfaction that he feels able, notwithstanding such opinion, to render an impartial verdict, applies to the new trial obtained by a person convicted of murder in the second degree under an indictment for murder in the first degree.

**13. INDICTMENT AND INFORMATION—DEGREE OF OFFENSE—"CAPITAL CASE".**

Within *Rev. Code* 1852, amended to 1893, *p.* 979, *c.* 133, § 20, providing that, upon a trial for any felony which includes an assault against the person, the jury may acquit of the felony and find a verdict of guilty of assault, but that this shall not apply to capital cases, a new trial obtained by a person convicted of murder in the second degree under an indictment for murder in the first degree was not a "capital case", where the state admitted that accused could not be convicted for murder in the first degree.

**14. HOMICIDE—"MURDER IN THE FIRST DEGREE"—"EXPRESS MALICE AFORETHOUGHT".**

"Murder in the first degree" is a killing done with express malice aforethought, and "express malice aforethought" exists where one person kills another with a sedate, deliberate mind and formed design.

15. HOMICIDE—ELEMENTS—"MALICE".

"Malice" is not restricted to spite or malevolence toward the particular person slain, but includes that general malignity and disregard of human life which proceed from a heart void of a just sense of social duty and fatally bent on mischief.

16. HOMICIDE—ELEMENTS—IMPLIED MALICE.

Malice is implied by law from every unlawful and cruel act voluntarily committed by one person against another, however sudden it may be.

17. HOMICIDE—"MURDER IN THE SECOND DEGREE".

"Murder in the second degree" is where the crime is committed with implied malice, without any deliberate mind or formed design to take life, but without any justification, excuse, or provocation reducing the offense to manslaughter.

18. HOMICIDE—PRESUMPTION OF MALICE FROM KILLING.

A killing with a deadly weapon, such as a gun, is presumed to have been done maliciously, in absence of evidence to the contrary, and the burden of showing the contrary is on accused.

19. HOMICIDE—ELEMENTS—"MANSLAUGHTER".

"Manslaughter" is the unlawful killing of another without malice, from an unpremeditated and unreflecting passion.

20. HOMICIDE—ELEMENTS—MANSLAUGHTER.

To reduce a homicide to manslaughter, the provocation must be so great as to produce such a transport of passion as to render the person for the time being deaf to the voice of reason.

21. ASSAULT AND BATTERY—CRIMINAL OFFENSES—"ASSAULT".

An "assault" is an unlawful attempt by violence to do injury to the person of another, with the means at hand of carrying the attempt into effect.

22. CRIMINAL LAW—GRADE OF OFFENSE—PROVINCE OF JURY.

In a case where one of several verdicts may be rendered, this right of the jury should not be exercised capriciously, and their verdict should be warranted by the evidence.

23. HOMICIDE—MANSLAUGHTER—PROVOCATION—TRESPASS.

No mere trespass on the premises of another, however annoying or provoking, is a sufficient provocation to reduce the killing of a trespasser with a deadly weapon, or other means likely to produce death, to manslaughter.

24. HOMICIDE—ACCIDENTAL KILLING—LIABILITY.

A person who fired shots solely for the purpose of frightening supposed trespassers, with no intention to do harm or injury, and with the same degree of care which a prudent man would have used under like circumstances, is not guilty of any grade of homicide.

25. HOMICIDE—SUFFICIENCY OF EVIDENCE TO REBUT PRESUMPTION OF MALICE.

The presumption of malice from a killing with a deadly weapon may be rebutted by either direct or circumstantial evidence.

26. CRIMINAL LAW—ELEMENTS OF OFFENSE—CRIMINAL INTENT.

To convict a person of any crime, the jury must be satisfied that there was a criminal intent, or such gross negligence that a criminal intent would be implied therefrom.

27. HOMICIDE—MANSLAUGHTER—ACCIDENTAL KILLING.

By express provision of statute it is unlawful for any person, in jest or otherwise, intentionally to point a gun towards another, and if death results from the discharge of the gun so pointed, the person pointing it is guilty of manslaughter, where the killing does not amount to murder.

28. CRIMINAL LAW—WEIGHT OF EVIDENCE—GOOD CHARACTER.

The good character of an accused person, when proved, is to be taken in connection with all the other evidence in the case, and given such weight under the facts and circumstances of the case as in the judgment of the jury it is entitled to.

29. CRIMINAL LAW—WEIGHT OF EVIDENCE—PROVINCE OF JURY.

When the testimony is conflicting, the jury should endeavor to reconcile it; but, if this is not possible, they should give credit to that testimony which they consider most worthy of belief.

30. CRIMINAL LAW—PRESUMPTIONS—INNOCENCE.

A person accused of crime is presumed to be innocent until his guilt is proved to the satisfaction of the jury beyond a reasonable doubt.

31. CRIMINAL LAW—DEGREE OF PROOF REQUIRED.

In a criminal case, the state must prove beyond a reasonable doubt every material ingredient of the crime charged; and if the jury, after carefully and conscientiously considering and weighing the evidence, entertain a reasonable doubt of accused's guilt, they should find him not guilty.

32. CRIMINAL LAW—DEGREE OF PROOF REQUIRED—"REASONABLE DOUBT".

The "reasonable doubt" which will justify a verdict of not guilty must not be a mere fanciful, vague, speculative, or possible doubt, but a reasonable doubt remaining in the minds of the jury after a consideration of all the evidence, such as a reasonable, fair-minded, and conscientious man would entertain.

33. HOMICIDE—EXTENT OF PUNISHMENT.

A man sixty years old killed a neighbor and friend by shooting him with a rifle from a distance of over eight hundred feet, and was convicted of manslaughter. He claimed that he did not know who the person was when he shot, or that a shot from his rifle could carry such a distance, and that he fired merely to frighten deceased from his premises. Prior to his conviction he had been confined in the workhouse for almost a year. *Held*, that the facts justified a fine of four hundred dollars and imprisonment for three years.

34. CRIMINAL LAW—PUNISHMENT—PROVINCE OF COURT.

The court, in imposing sentence, cannot be influenced by its personal feelings, and the sentence must be based primarily on the verdict.

(*March* 11, 1913.)

PENNEWILL, C. J., and BOYCE and RICE, J. J., sitting.

*Josiah O. Wolcott,* Attorney General, for the state.

*Daniel O. Hastings* and *Richard S. Rodney* for the defendant.

Court of Oyer and Terminer, New Castle County, March Term, 1913.

At a Court of Oyer and Terminer, in and for New Castle County, March 10, 1913, Charles B. Naylor was tried upon an indictment (No. 42 to the March Term, 1913), charging him with murder of the first degree for the felonious killing of Earvil J. Francis by shooting with a rifle on January 19, 1913, in Appoquinimink Hundred, New Castle County.

Verdict of guilty of murder of the second degree. Whereupon counsel for the defendant moved for a new trial. Charge in first trial not reported, the facts and law applicable thereto being contained in the charge at the second trial.

Motion for a new trial, being argued at said session,was granted for the reasons stated in the following opinion:

PENNEWILL, C. J., delivering the opinion of the court:

A motion has been made for a new trial for reasons which may be summarized as follows:

1. That a certain juror had formed and expressed an opinion respecting the guilt of the defendant before he was called and examined upon his *voir dire* when he swore that he had not formed and expressed such an opinion.

2. That the court improperly permitted the state to show, in the cross-examination of a character witness produced by the defendant, that the witness had, since the commission of the act charged in the indictment, heard persons say the defendant threatened to shoot other persons before committing the homicide for which he was tried.

3. That the defendant at another trial would be able to show by a new witness, whose testimony could not be produced at the trial, that very damaging testimony given at the trial by a witness for the state, was false.

[1] Respecting the first ground we need only say, the court

are not satisfied that the juror had, before the trial, formed and expressed an opinion touching the guilt of the prisoner. The only evidence presented to support the charge of the defendant is an affidavit made by Walter S. Burris, wherein it is averred that the juror said to the affiant the day before the trial:

"I am going to Wilmington to-morrow; I have nothing to do and want to hear the argument in the case of the *State v. Naylor.* I think Naylor has gotten himself in a pretty bad hole. From what I can hear he killed the boy all right."

The juror, by affidavit, denies that he made such a statement. He admits, however, that he said to Burris, something to the effect that, "from what I could hear it looked as though Naylor killed the boy," but he insists that he had not formed and expressed any opinion respecting the guilt or innocence of the prisoner. But independent of such denial, and assuming that the juror did make the statement contained in the affidavit, it does not appear to the court that the juror was disqualified from sitting in the case. The language he is alleged to have used does not convince us that he had formed and expressed an opinion touching the guilt or innocence of the prisoner.

In the case of *State v. Harmon*, 4 *Penn.* 588, 60 *Atl.* 870, a new trial was asked for because a juror had said, "from what people are saying it looks as though Harmon would be hanged." Such language we think more strongly and clearly expressed an opinion than the words alleged to have been spoken by the juror in the present case, but the court refused to set the verdict aside.

In the case of *State v. Robinson*, 9 *Houst.* 404, 33 *Atl.* 57, the defense waived the right to have the juror asked the question whether he had formed and expressed an opinion, but asked for a new trial because he subsequently made statements showing, it was contended, that he had formed and expressed an opinion concerning the defendant's guilt before the trial. The refusal of the court to grant a new trial in that case was based largely upon such waiver, but it was declared that the statements made by the juror would not be regarded as sufficient to disqualify him from serving on the jury if the question had not been waived; and the court intimated very strongly that if there was

nothing to show that the statement made by the juror had influ-
enced him in reaching the verdict, and he swore at the hearing
of the motion for a new trial, that it had not influenced him, and
that he had not in fact formed and expressed such opinion, the
verdict would not be disturbed.

[2]   In regard to the second ground we say: It is true that
the defendant in proving his good character is confined to the
time preceding the commission of the crime for which he is being
tried; the evidence must be directed to proof of the defendant's
reputation as it existed before the accused was charged or gen-
erally suspected of the offense.   The general rule has ever been
that in a criminal case evidence tending to show the bad character
of the defendant must be confined to the time of, and anterior to,
the alleged commission of the offense for which the defendant is
being tried.   *State v. Kinley*, 43 *Iowa*, 294; *Carter v. State*, 4 *Ala.
App*. 72, 59 *South*. 222; *Robinson v. State*, 5 *Ala. App*. 45, 59
*South*. 321.

If the matter testified to came to the knowledge of the wit-
ness after the commission of the homicide which was the sub·ect
of investigation, it is not competent testimony.   The reputation
which a defendant has made upon the subject of quietness and
good citizenship available for or against him in a criminal cause
when he puts his character in issue is that which he bore at and
before the taking place of the act for which he is put upon trial,
not a reputation subsequently acquired or created for or against
him.   A different view would put a premium on the manufac-
turing of evidence.   *Powers v. State*, 117 *Tenn*. 373, 97 *S. W*.
815.

[3]   It is equally true, that when a person testifies to the good
character of the defendant he is liable to cross-examination, not
for the purpose of discrediting the person whose reputation is
involved, or of disproving the good reputation or character by
proof of specific acts or facts, but such testimony is admissible
for the sole purpose of testing the accuracy and candor of the
witness himself.   16 *Cyc*. 1280, and cases there cited.

In none of the cases cited by the defendant, except *Powers v.
State*, was the question involved similar to the one now before the

court. In the other cases the question was practically like the one raised in *State v. Viscome*, 78 *Vt.* 486, 63 *Atl.* 877, where the defendant proved his good character, and "the state was permitted to show in rebuttal what people were saying about him after the homicide in respect of his reputation in this regard before the homicide." This ruling was held upon appeal to be error.

In the present case the question is whether the state may, after a witness has testified that the reputation of the defendant for peace and good order is good, in cross-examining such witness for the purpose of testing his accuracy, candor and trustworthiness, ask him if he had heard at any time that the defendant had threatened to shoot other persons. Counsel for the prisoner, in the direct examination, did not confine his question to the time preceding the homicide, and the witness answered: "His reputation is good." The jury might believe from such answer that the witness testified to the reputation of the prisoner since as well as before the homicide, and it would seem not unreasonable that the state should be permitted to make its cross-examination as broad and comprehensive as the examination in chief. We express no opinion upon this point, however, and in view of the evidence it is not necessary that we should. We do say, however, that counsel for the defendant should limit his question respecting the defendant's reputation to the time preceding the homicide, and in such case the state would certainly be precluded from inquiring about any statements subsequently made.

[4] But, in view of the evidence given at the trial, we think the cross-examination of the character witnesses which is urged as a reason for a new trial, was harmless and not prejudicial to the defendant, even if it was not permissible under the law.

The state in presenting its case, and for the purpose of showing malice, introduced in evidence threats made by the defendant, and they were the same threats which the character witnesses admitted on cross-examination they had heard talked about. The threats were, therefore, before the jury from the testimony of witnesses who swore they heard the prisoner make them,

which must have been more effective with the jury and more harmful to the prisoner than any hearsay testimony respecting the threats. Hence, we must conclude that the statements made about threats in the cross-examination of the character witnesses could not have influenced the jury in reaching their verdict, and were not prejudicial to the defendant's cause.

[5, 6] The third reason urged for a new trial has given the court considerable trouble, and it was with much difficulty that we reached a conclusion. We were very much impressed at the trial with the importance, pertinency and strength of the testimony given by William Francis, a witness produced by the state, which tended very strongly, we think, to prove three material and important facts in the case, viz.: (1) That the small rifle used by the prisoner would carry a bullet as far as the deceased was distant from the defendant when the shot was fired—nearly three hundred yards; (2) that the defendant had knowledge of such carrying power; and (3) that the defendant could use the rifle very effectively in shooting at an object farther away than three hundred yards.

The defendant furnished practically all the testimony that was given in his behalf to disprove the last two points, and he was corroborated in disproving the first point by the two army officers who testified only as experts.

But it is contended on the part of the state that a new trial should not be granted on this ground because it does not appear that the defendant used due diligence in securing, at the trial, the testimony which he now claims he could not produce. We realize the importance of sustaining verdicts of juries honestly and fairly given, and know they should not be disturbed except for good and sufficient cause. Certainly they should not be set aside in order that new testimony may be presented if the failure to present it at the trial was owing to the laches of the defendant, or the failure on his part to exercise due diligence. We have carefully considered this point in the present case, and have reached the conclusion that the failure to introduce the testimony in question was not caused by the laches of the defendant. It appears from the affidavit filed by the defendant that the witness who is

expected to furnish the new evidence was sick at the time of the trial; that the fact that he could furnish such evidence was not then known to the defendant, and if he had known it, it would have been impossible to secure the attendance of the witness because he was at the time sick in the hospital at Farnhurst, and physically unable to attend the trial.

There being nothing before the court which controverts the truthfulness of such averments, and being satisfied moreover that the new evidence which the defendant expects to present if a new trial is granted, is very material and exceedingly important to the prisoner, it is ordered by the court that the verdict rendered in this case be set aside, and a new trial granted.

This conclusion, we think, violates no settled principle of criminal law.

*Mr. Bishop* in his *New Criminal Procedure (Volume* 1, § 1279), which is cited and relied upon by the Attorney General, states the law applicable to the subject under consideration as follows:

"Newly discovered evidence, equally in criminal causes as in civil, is a common—perhaps the most common—ground of application for a new trial. The discovery must have been since the trial, the delay in the discovery must not have been from want of diligence, and ordinarily the purpose of the new evidence must not be to establish a defense before known. With rare exceptions, it must not be to the same matter with that heard on the trial, termed cumulative; yet such, when very conclusive, will suffice. It must presumably be forthcoming at the new trial, relevant, and so full and such in other respects as may probably change the result. Therefore, what serves merely to impeach a witness, or to show him hostile to the defendant, will generally be inadequate. And we have varying cases within the reasons of these propositions while not within their terms."

In the present case the only testimony which tended to disprove much of the damaging testimony given by William Francis was that given by the defendant himself. But his interest in the result of the trial was so great that the jury might very well have disbelieved him entirely or have given his evidence no weight or consideration at all. Such being the case we think the new evidence which the defendant expects to use at the new trial would not be cumulative within the meaning of the law as laid down by Mr. Bishop. Neither would its effect be to impeach or merely contradict some other witness. If believed by the jury its effect

would be to disprove, perhaps, the testimony offered by the state on three material and vital points, and without which the jury might very reasonably have rendered a different verdict in the case.

### MOTION TO VACATE THE ORDER GRANTING A NEW TRIAL.

The state subsequently filed a motion to vacate the order granting a new trial. The basis of this motion was, omitting the caption, etc., as follows:

"That the jury duly impaneled to try Charles B. Naylor, the above named defendant, returned a verdict of guilty of murder in the second degree on the twelfth day of March, A. D. 1913; that the said Charles B. Naylor on the twenty-fifth day of March, A. D. 1913, filed certain reasons why he should be granted a new trial, *inter alia*, newly discovered evidence, therein setting forth that the newly discovered evidence would be furnished by one George E. Naylor, then confined to the New Castle Hospital by illness; that on the fifth day of May, A. D. 1913, a new trial of the said Charles B. Naylor was ordered by the court upon the ground of the newly discovered evidence as in said reasons for a new trial set forth, and reference is hereby .made to the record in the case where the hereinbefore recited facts more fully appear; that the said George E. Naylor, the witness referred to in the said reasons for a new trial, and who was relied upon by the said defendant to establish the facts which he alleged had been newly discovered, died at the New Castle County Hospital on the seventeenth day of May, A. D. 1913, and the affidavit of James W. Foster, hereto attached, is referred to in support of the allegation of the death of the said George E. Naylor."

On June fourth the motion coming on to be heard, the Attorney General was granted leave to file an affidavit in support of the motion, in which the affiant deposed:

"That he is superintendent of the New Castle County Hospital; that he remembers that on or about the nineteenth day of March, A. D. 1913, there was at the said hospital a person by the name of George E. Naylor; that the said George E. Naylor was the only person of that name at the said hospital during the said month of March; and that the said George E. Naylor, who was at the said hospital at the day and year last aforesaid, died at the said hospital on the seventeenth day of May, A. D. 1913."

Mr. Hastings, of counsel for defendant, objected to the filing of the affidavit, because the time in which an affidavit could be filed, either in favor of or against a new trial, had expired, and for the further reason that the motion before the court was really a motion to rehear the motion for a new trial, and it was urged that the application was too late, under the rules of court.

Arguments—Opinion.

The Attorney General, in reply, contended that the motion before the court was not an application for a rehearing of the motion for a new trial; that the affidavit offered was in support of the present motion and not in rebuttal to the affidavit previously filed by the accused when he made his motion for a new trial; that the court granted the new trial solely on the ground of after-discovered evidence which is absolutely and irretrievably gone, and therefore the only thing that induced the court to grant a new trial no longer exists; and assuming that the situation would warrant the vacating of the order, how can that matter be brought to the attention of the court except by an affidavit?

PENNEWILL, C. J., delivering the opinion of the court:

[7]    It does not seem to the court that this motion now made by the Attorney General is an application for a rehearing or a renewal of the matter that has been decided by this court, but rather it is an application for the vacation of an order made by the court in respect to the matter. No objection is made to the motion, or the paper, other than the affidavit, and if the paper may be filed, we think the affidavit in support of the paper may also be filed.

We are passing now upon the right of the state to file the affidavit, and not upon the merits of the motion. We overrule the objection and allow the affidavit to be filed.

BRIEF OF STATE ON MOTION TO VACATE ORDER FOR A NEW TRIAL.

Motions for new trials are governed by the same rules in criminal as in civil cases. *State v. Stain et al.*, 82 *Me.* 472, 489, 20 *Atl.* 72; *Grayson's Case*, 6 *Grat.* (*Va.*) 723.

"It is a general rule of the law that all judgments, decrees, or other orders of the courts, however conclusive in their character, are under the control of the court which pronounces them during the term at which they are rendered or entered of record, and they may then be set aside, vacated, modified, or annulled by that court." *Bronson v. Schulten*, 104 *U. S.* 410, 415, 26 *L. Ed.* 797; *Irrigation Co. v. Gildersleeve*, 174 *U. S.* 603, 609, 19 *Sup. Ct.* 761, 43 *L. Ed.* 1103; *U. S. v. Linnier* (*C. C.*) 125 *Fed.* 83, 86; *Com. v. Weymouth*, 2 *Allen* (*Mass.*) 144, 145, 79 *Am. Dec.* 776; *U. S. v. Harmison*, 3 *Sawy.* 556, 557, *Fed. Cas. No.* 15,308.

And this is the rule in both criminal and civil cases. *U. S. v. Harmison*, 3 *Sawy.* 556, 557, *Fed. Cas. No.* 15,308.

Further, the court has power to set aside a *judgment* in a criminal case and impose a heavier sentence, if done at the same term. *State v. Daugherty*, 70 *Iowa*, 439, 30 *N. W.* 685; *Com. v. Weymouth*, 2 *Allen (Mass.)* 144, 79 *Am. Dec.* 776; *Rex v. Price,* 6 *East*, 323.

"Because the trial of the case was at this term, as was the order granting the new trial—the term not yet having adjourned—it would be entirely proper to vacate the order granting a new trial, and then pronounce judgment on the verdict. *U. S. v. Linnier* (*C. C.*) 125 *Fed.* 83, 86.

"Where the newly discovered evidence would be incompetent on a new trial the motion for a new trial should be denied. As it would not be admitted it could not influence the verdict and hence a new trial will be useless." 12 *Cyc.* 739, and note 61; *Hutchins v. State*, 151 *Ind.* 667, 52 *B. E.* 403; *Wilkerson v. State* (*Tex. Cr. App.*) 57 *S. W.* 956, 963.

"It [the evidence] must presumably be forthcoming at the new trial." 1 *Bishop's New Crim. Proc.* § 1279.

At common law a defendant had no indefeasible right to the benefit of a verdict in his favor in all cases. 1 *Chitty's Crim. Law*, 651, citing; 2 *Salk.* 646; 12 *Mod.* 9; *Sayer*, 90; *Hawk.* B, 2, C, 47 s, 12; *Bacon's Ab. Trial*, L, 9, *acc.* 1; *Sid.* 153; 1 *Lev.* 9, *Cont.*

We have seen that he had no rights that would prevent the court, at the same term, from altering a final judgment increasing the penalty.

The defendant having no rights which prevent the court from vacating its order for a new trial, and the conditions being such that, if presented on a motion for a new trial; the same would have been refused, the case should not be protracted to and through a new trial, there now existing no legal reason therefor.

Where the evidence, upon the theory of the subsequent production of which a new trial is granted, becomes impossible of production, the whole reason for granting a new trial fails, and, there then existing no reason for a new trial, the matter being brought to the attention of the court by a proper motion, and the order being within the control of the court, there is no further reason for its existence and it should be vacated.

BRIEF OF ACCUSED OPPOSING MOTION TO VACATE ORDER FOR A NEW TRIAL.

"A reargument or rehearing differs from a renewal in the following particulars: (1) It is not an independent proceeding, but is always to be heard on the same notice and the same papers upon which the original motion was heard; (2) although the time to move has elapsed and the court has no power to grant leave to renew, so as to enlarge such time, yet a motion for a rehearing may be entertained; (3) it is not appealable.

"Where there has been a decision upon a motion, the doctrine of *res judicata* does not go so far as to preclude a further inquiry and a rehearing where there has been a misapprehension of the fact, or where it appears that some decision or principle of law, which would have had a controlling effect, has been overlooked; but the power to grant a rehearing or reargument cannot be arbitrarily exercised, and if the judge grants it on insufficient grounds his action constitutes reversible error.

"A motion for reargument of a motion is generally addressed to the discretion of the court.

"On proper grounds a judge deciding a motion may grant a rehearing or reargument on the same papers only, and it is in this respect that reargument differs from renewal which may be upon the same or new papers." 28 *Cyc. p.* 16.

The order of the court on the hearing of a motion for a new trial is final, and cannot be set aside on motion unless it was inadvertently made, and it should furnish a basis upon which to determine the rights of the parties in subsequent trials.

An order granting a new trial, as a general rule, vacates a former judgment without any special order to set it aside, and sweeps away the verdict and leaves the case as though no trial had been had. 16 *A. & E. Enc. of Law*, 671, 672; *Coombs v. Hibberd*, 43 *Cal.* 452 (followed in *Dorland v. Cunningham*, 66 *Cal.* 484, 6 *Pac.* 135, *Odd Fellows' Sav. Bank v. Deuprey*, 66 *Cal.* 168, 4 *Pac.* 1173, *Lang v. Superior Court*, 71 *Cal.* 491, 12 *Pac.* 306, 416, and *Holtum v. Greif*, 144 *Cal.* 521, 78 *Pac.* 11); *State v. Police Board*, 51 *La. Ann.* 747, 25 *South.* 637; *Mathis v. State*, 40 *Tex. Cr. R.* 316, 50 *S. W.* 368.

"It is a rule widely governing in these cases, and reconciling multitudes of seeming conflicts in them, that, on whatever grounds the new trial is asked, the court will look through the entire proceedings which led to the verdict, consider in connection with them the new facts and reasons, and order the reversal if it deems there was injustice which probably may be corrected, otherwise refuse." *Bishop, New Crim. Proc.* § 1277.

PENNEWILL, C. J., delivering the opinion of the court:

[8] There is nothing before the court to show that the

order setting aside the verdict and granting a new trial was mistakenly or inadvertently made. There has been no authority produced by the state showing that any court has vacated such an order, unless it appeared that it was made under a misapprehension or through a misunderstanding. The motion to vacate the order setting aside the verdict and granting a new trial is refused.

At a session of the Court of Oyer and Terminer, in New Castle County, October 2, 1913, Mr. Rodney, of counsel for the prisoner, moved to withdraw the plea of not guilty, he contending that the prisoner having been convicted of murder of the second degree in the former trial, and a new trial having been granted, the accused could withdraw the plea entered as a matter of right.

Mr. Wolcott stated that if counsel for the accused proposed to plead former acquittal of murder of the first degree inasmuch as the defendant had been found guilty of murder of the second degree, notwithstanding he had made a motion for a new trial and succeeded, and now meant to contend that the prisoner could not be found guilty of anything more than murder of the second degree, he was ready to concede that the prisoner could not now be convicted of a higher grade of offense than murder of the second degree; and he did not propose to ask for a conviction of murder of the first degree.

PENNEWILL, C. J.:—[9] We think the defendant can be tried again under this indictment, but we recognize that under the law he cannot be convicted of murder of the first degree, and we will so instruct the jury at the trial. We think that ought to be satisfactory to the defense.

Mr. Rodney:—This case is entirely a case of new impression in this state, and the interests of the prisoner demand that he be given all legal defense which may be available for him; and the right certainly should be put in the hands of counsel for the prisoner to interpose any legal objection that they might have to the indictment.

BOYCE, J.:—Have you any doubt, Mr. Rodney, that the prisoner can be tried under this indictment?

*Mr. Rodney:*—If permitted to withdraw the plea of not guilty, my purpose is to enter a plea of *autrefois acquit*, which goes to the point that the prisoner cannot be tried again for murder of the first degree, and move to quash as to the rest of the indictment. The motion to quash will be on entirely different grounds, which could not have arisen before.

PENNEWILL, C. J.:—[10] We think it is admitted on both sides that this application is addressed to the discretion of the court.

*Mr. Rodney:*—No, sir.

PENNEWILL, C. J.:—We think it is, and we think that everything you can reasonably expect or ask will be accomplished when the court shall instruct the jury at another trial, if there is another trial, that the defendant cannot be convicted of murder of the first degree. We refuse your application.

*Mr. Rodney:*—Believing that the defendant had, as a matter of right, a right to withdraw his plea of not guilty, I ask that an exception be noted.

PENNEWILL, C. J.:—Let the exception be noted.

At a subsequent session of the Court of Oyer and Terminer, held in November, 1913, counsel for the accused again asked leave to withdraw the plea of not guilty and moved to quash the indictment. The court heard the application, but refused it, for the reasons set forth in the following opinion:

PENNEWILL, C. J., delivering the opinion of the court:

The indictment in this case is for murder of the first degree. At a former trial the jury found the defendant not guilty of murder of the first degree, but guilty of murder of the second degree. Thereupon the defendant moved that the verdict be set aside and a new trial granted. After argument and due consideration, the court granted the motion for the reasons set forth in the opinion.

A motion is now made by the defendant that he be allowed to withdraw his plea of not guilty so that he may move to quash the indictment for the following reasons:

"1. That he is being tried under an indictment for murder in the first degree of which, by the judgment of the court, he cannot be convicted.

"2. The court having decided that the defendant cannot be convicted of murder of the first degree, the indictment must be considered as one of second degree which is contrary to the statute (*Section* 21 of *Chapter* 133 of *Code, page* 980) which sets out that 'the different degrees of murder shall be distinguished in the indictment.'

"3. That the defendant is not able to go to trial with a definite knowledge of his rights under the indictment.

·   "(a)   As to the number of challenges, *Section* 16 of *Chapter* 133 of *Code, page* 979, sets out as follows:

" 'A person indicted for a crime punishable with death shall, at the trial, have right to challenge twenty jurors peremptorily, but no more, except for lawful cause; and a person indicted for any other crime, or misdemeanor, shall have right to challenge six jurors peremptorily, but no more except for awful cause.   *   *   *

" 'On the trial of any indictment in the Court of Oyer and Terminer for a crime punishable with death, the prosecuting officer may, on behalf of the state, challenge peremptorily any jurors drawn not exceeding ten, and on the trial of any other indictment in said court, the state, by its prosecuting officer, may challenge peremptorily any jurors drawn not exceeding three.   The right of challenge to any juror as he is called shall be first exercised by the prisoner.'

"(b)   As to the competency of the jurors under *Chapter* 221, *Volume* 17, *Laws of Delaware* (*Code, page* 808), which sets out as follows:

" 'When a juror is called in a capital case he shall be first sworn or affirmed upon the *voir dire* and then asked, under the direction of the court, if he has formed and expressed any opinion in regard to the guilt or innocence of the prisoner at the bar.   If his answer be in the negative, he shall be sworn as a juror in said case, unless he has conscientious scruples against finding a verdict of guilty in a case where the punishment is death, even if the evidence should so warrant him, or unless he shall be peremptorily challenged, challenged for cause, or excused by consent of counsel on both sides.   If his answer to said question be in the affirmative, he shall be disqualified to sit in said case, unless he shall say, upon his said oath or affirmation, to the satisfaction of the court, that he feels able, notwithstanding such an opinion, to render an impartial verdict upon the law and the evidence; in which event he shall be a competent juror, if not otherwise disqualified, challenged, or excused.'

·   "4. The defendant is not able to go to trial under this indictment with a definite knowledge of the crime for which he may be convicted and if convicted, with a definite knowledge of the punishment which is specified by statute.   *Section* 20 of *Chapter* 133 of the *Revised Code, page* 979, sets out as follows:

" 'Upon the trial of any person for any felony whatever, where the crime charged shall include an assault against the person, it shall be lawful for the jury to acquit of the felony and to find a verdict of guilty of assault against the person indicted, if the evidence shall warrant such finding; and when such verdict shall be found, the court shall have power to impose a fine on the person, so found guilty of an assault not exceeding three hundred dollars, and to imprison him for a term not exceeding three years.

" '(*Provided that nothing in this section shall be construed so as to apply to capital cases*)' "

Opinion.

Having heard the argument that would be urged for quashing the indictment, and being of the opinion that the motion should be refused, it is unnecessary for the court to determine whether the defendant has a right to withdraw his plea of not guilty at the present stage of the case.

The application to quash is made by the defendant for the admitted purpose of ascertaining whether he might be convicted of simple assault in this case, and also of ascertaining his rights with respect to the challenging of jurors.

[11] The court is clearly of the opinion that the defendant in this case has a right to challenge twenty jurors peremptorily, and the state ten, just as though the defendant was being tried for murder of the first degree. We cannot escape this conclusion in view of the express terms of the statute.

[12] We further hold that a juror when called in this case shall first be sworn or affirmed on his *voir dire*.

[13] The statute which provides that "upon the trial of any person for any felony whatever, where the crime charged shall include an assault against the person, it shall be lawful for the jury to acquit of the felony and to find a verdict of guilty of assault," etc., contains also the following provision: "Provided that nothing in this section shall be construed so as to apply to capital cases."

Inasmuch as it is admitted by the state that the defendant, after being acquitted of murder of the first degree, cannot upon another trial upon the same indictment be convicted of that grade of murder, we think the case now against the defendant, and for which he is to be tried is not a capital case within the meaning of said statute; and we will charge the jury that said statute applies to the present case.

The court has, in at least one case, charged the jury that, upon a trial of a person for murder of the second degree, he might be convicted of assault if the evidence shall warrant such finding.

The accused was placed upon trial for the second time.

The facts and contentions appear in the charge of the court.

PENNEWILL, C. J., charging the jury:

Gentlemen of the jury:—It is charged in this indictment that the prisoner, Charles B. Naylor, did on the nineteenth day of January, 1913, willfully, feloniously and with express malice aforethought shoot, kill and murder one Earvil J. Francis, in Appoquinimink Hundred in this county.

While the indictment charges murder of the first degree, the defendant, as the Attorney General has informed you, is not being tried for that degree of murder. In this trial the state contends that the defendant is guilty of murder of the second degree, and not of the first degree. The state claims that on the day mentioned, the deceased, who was a boy about eighteen or nineteen years of age, had gone accompanied by his brother to the marsh where the prisoner had traps set for the catching of muskrats, and that after visiting their own traps and looking for ducks, the boys were retracing their steps when the prisoner without any justification, excuse or provocation shot at them twice with a small rifle from a distance of eight hundred and thirty-eight feet, the first shot striking and penetrating the side or stomach of the deceased, and inflicting a wound from the effects of which he died three days thereafter. The prisoner does not deny that he fired two shots on the day the boy was shot, when distant from him about eight hundred and thirty-eight feet, but says he did not believe that either of those shots could have inflicted the fatal wound because he fired them at such an elevation and direction that they could not have struck the boy, and also for the reason that the shots were discharged from such a small rifle that they could not have had sufficient power to reach the boy if the prisoner had endeavored to shoot him. He claims that he had no thought or intention of shooting or harming the deceased.

It does not appear that there had ever been any trouble between the two boys or their family and the prisoner; and the prisoner claims that he did not know who the boys were when he fired the two shots.

The prisoner does not contend that the boys had said or done anything which would have justified his shooting at them, but claims that he had been very much annoyed by dogs disturbing

Charge.

his traps at different times, and that he fired the shots solely for the purpose of causing the persons on the marsh to leave and keep away from his boat. He insists that the rifle he used had not sufficient force or carrying power to inflict any injury at the distance the boys were from him, and that he did not in fact shoot at them at all, or even see them at the time he shot, but fired at an elevation and in a different direction from that in which he supposed them to be when the shots were fired.

The defense, therefore, in this case is that there was no intention on the part of the defendant to kill or injure the boy, that the killing was entirely unintentional and accidental, and there was not only no malice in the heart of the defendant at the time, but that there was no criminal intent, or any such negligence as would justify a verdict of guilty of any crime.

The crime charged in this case against the prisoner by the state is murder of the second degree, and you may find any one of four verdicts, according as the evidence shall, in your judgment, warrant, viz.: Guilty of murder in the second degree, guilty of manslaughter, guilty of assault, or not guilty.

It becomes the duty of the court, therefore, to instruct you respecting the law applicable to murder of the second degree, as well as manslaughter and assault.

[14-16] While it is not necessary for the court to instruct you respecting murder of the first degree, we will briefly define it in order that you may the more clearly understand what is meant by murder of the second degree. Murder of the first degree is where the killing was done with express malice aforethought; and express malice aforethought is where one person kills another with a sedate, deliberate mind and formed design. Malice is an essential element of murder of both degrees, for without malice there cannot be murder of either degree. Malice we may say is a condition of the heart, and is not restricted to spite or malevolence toward the particular person slain, but also includes that general malignity and general disregard of human life which proceed from a heart void of a just sense of social duty and fatally bent on mischief. Malice is implied by law from every unlawful and cruel act committed by one person against another, however

sudden it may be, for the law considers that he who does an unlaw-ful and cruel act voluntarily, does it maliciously. If death ensues from an unlawful and cruel act of violence on the part of the slayer, in the absence of adequate or sufficient provocation, the law implies that the act was done maliciously.

[17] Murder of the second degree is where the crime is com-mitted with implied malice; that is, where the malice is not express, as in murder of the first degree, but is an inference or con-clusion of law from facts actually proved. It is where there is no deliberate mind or formed design to take life, but where the killing was done without justification or excuse and without provocation or without sufficient excuse and provocation to reduce the offense to manslaughter. For example, where the kill-ing was committed without design and premeditation, but under the influence of a wicked and depraved heart, or with a cruel and wicked indifference to human life, the law implies malice and makes the offense murder in the second degree.

[18] Where the killing is shown to have been done with a deadly weapon, such as a gun, it is presumed to have been done maliciously, in the absence of evidence to the contrary, and the burden of showing the contrary is on the accused, for the usual and probable consequences of the act are presumed in law to have been intended by the person using the deadly weapon. If death is produced by the use of a deadly weapon, great must be the provocation to reduce the killing from murder to man-slaughter.

[19, 20] Manslaughter is the unlawful killing of another without malice. In order to reduce the crime to manslaughter the provocation must be very great; so great as to produce such a transport of passion as to render the person for the time being deaf to the voice of reason. While murder proceeds from a wicked and depraved heart and is characterized by malice, manslaughter results not from malice but from unpremeditated and unreflect-ing passion.

[21] An assault is an unlawful attempt by violence to do an injury to the person of another with the means at hand of carrying the attempt into effect.

[22]   We say to you that in a case where any one of several verdicts may be rendered, the right of the jury should not be exercised capriciously, but their verdict should be warranted by the evidence, as in other cases.   If there be not evidence justifying any adverse verdict, they may and should acquit altogether. *State v. Becker*, 9 *Houst.* 412, 33 *Atl.* 178.

[23]   We think it proper to say to you that no mere trespass on the premises of another, however annoying or provoking it may have been to him, could constitute in law a sufficient provocation to reduce the killing of such a trespasser or wrongdoer by the owner of the premises from murder to manslaughter when it is done with a deadly weapon or any other means likely to produce death.

[24]   While this is true, yet, if you believe from the testimony that the person fired the shots solely for the purpose of frightening supposed trespassers, with no intention to do harm or injury, and in firing the shots used the same degree of care which a prudent man would have used under like circumstances, your verdict should be not guilty.

[25, 26]   As we have already said, where the killing is shown to have been done with a deadly weapon, it is presumed to have been done maliciously, in the absence of evidence to the contrary, and the burden of showing the contrary is on the accused. It is the duty of the jury, therefore, in such a case to determine from all the facts and circumstances disclosed by the evidence whether such presumption has been rebutted.   In deciding this question you may and should carefully consider all such facts and circumstances because the presumption may be rebutted by either direct or circumstantial evidence.   In order to convict the prisoner of any crime you must be satisfied either that there was a criminal intent, or that his negligence was so gross as that a criminal intent would be implied therefrom.

[27]   Under a statute of this state it is made unlawful for any person, in jest or otherwise, intentionally to point a gun towards any other person at any time or place, and if any person commits such unlawful act and death results from the discharge of the gun so pointed, the person pointing the same shall be guilty of

manslaughter, when such killing does not amount to murder. So that if you believe beyond a reasonable doubt that the defendant pointed the gun towards the deceased, and that he did it intentionally, and also believe that the death of the boy resulted from the discharge of the gun so pointed, and that the killing did not amount to murder, your verdict should be, guilty of manslaughter.

[28] The good character of an accused person, when proved, is to be taken in connection with all the other evidence in the case, and is to be given just such weight under all the facts and circumstances of the case as in the judgment of the jury it is entitled to.

[29] When the testimony is conflicting the jury should endeavor to reconcile it. If it is not possible to reconcile it, they should give credit to that testimony which they consider most worthy of their belief.

[30-32] In every criminal prosecution the accused is presumed to be innocent until his guilt is proved to the satisfaction of the jury beyond a reasonable doubt. In order to convict the prisoner it is incumbent upon the state to prove beyond a reasonable doubt every material ingredient of the crime charged. If, after carefully and conscientiously considering and weighing all the evidence in the case, you should entertain a reasonable doubt of the guilt of the prisoner, you should give him the benefit of such doubt and your verdict should be not guilty. But such a doubt must not be a mere fanciful, vague, speculative or possible doubt, but a reasonable, substantial doubt remaining in your minds after a careful consideration of all the evidence; and such a doubt as reasonable, fair-minded and conscientious men would entertain under the evidence.

Now, gentlemen, if you believe beyond a reasonable doubt that the defendant shot and killed the deceased, with implied malice, your verdict should be guilty of murder in the second degree. If you should believe the defendant shot and killed the deceased unlawfully, but without malice, your verdict should be guilty of manslaughter.

If you do not believe the prisoner is guilty of either murder

of the second degree or manslaughter, but are satisfied beyond a reasonable doubt that he is guilty of an assault, you may so find under a statute of this state.

Finally, if you should not be satisfied beyond a reasonable doubt that the defendant killed the deceased maliciously or unlawfully, your verdict should be not guilty.

Verdict, guilty of manslaughter.

### REMARKS OF THE COURT IN IMPOSING SENTENCE.

PENNEWILL, C. J.:—[33, 34] The jury have found you guilty of manslaughter, and we must take the verdict to mean just what the law defines the offense to be, viz.: That you are guilty of an act that was committed in the heat of blood, but without malice.

In view of your friendly relations with the deceased and his family before the shooting, it is difficult to conceive that you could have had any malice in your heart towards the boy that was slain. The jury have said you were not actuated by malice towards any one, but fired the fatal shot in a transport of passion, and before the blood had time to cool.

Because of your age, your family, and the good reputation you were able to prove, we are glad the jury could reach such conclusion.

But your unfortunate act was, according to the verdict, unlawful and inexcusable. And while we have some feeling of sympathy for you now in your present situation, there can be no excuse offered or found for the recklessness of the act which destroyed the life of a young man who was, you say, your neighbor and friend. It may seem inconceivable to you that the shot you fired from a small rifle at such a great distance could have struck and killed the deceased. But it did nevertheless, and you pointed and discharged the gun towards the place where the boys were at the time. You may not have known who they were; you may not have seen them at the very instant you shot, but you had seen two persons on the marsh, and in their direction you fired. The jury have said the shooting was not a reckless disregard of human life in the legal sense, but the result of sudden

madness or rage. While that will be accepted as true, we think, and feel it our duty to say, that the shooting itself was a reckless and careless act which can be neither palliated or excused. We deeply regret the untimely death of Earvil Francis, as we believe you also do, and our sympathy goes out to his stricken and bereaved family. But our personal feelings, one way or the other, should not influence the court in determining the sentence that should be imposed. It must be based primarily on the verdict rendered in the case.

You are now sixty years of age, and we have no thought that you will ever commit a similar offense again. You have been taught a severe lesson no doubt, and have already suffered much and been severely punished for your crime. But for the benefit of others we think it proper to repeat and emphasize here one point briefly mentioned in the charge, viz.: That no one has a right to kill, shoot or strike another whom he finds trespassing upon his lands, no matter how annoying the trespass may be.

For such offense the law provides a different remedy, and to such remedy the law-abiding citizen will resort for the redress of wrongs. The feeling and thought is too general that a man may do what he pleases on his own premises, even to the extent of taking human life or doing bodily harm. And the reckless use of firearms is entirely too common with very many people. The law recognizes this fact, and hence the statute which makes it unlawful for any person to point a pistol or gun at another in jest or otherwise at any time or place. For such an offense the penalty is manslaughter if death results and the killing does not amount to murder. This statute is, in our opinion, a most excellent and necessary one, and we are strongly inclined to believe it had much to do with the verdict rendered in your case.

In view of the fact that the jury found the killing to be the result of sudden passion and not of malice, and of the fact that you have already been in the workhouse for almost a year, and of other facts and circumstances to which we have referred, the sentence of the court is that you, Charles B. Naylor, pay a fine of four hundred dollars, that you be imprisoned for a term of three years commencing this day and ending on the seventeenth day of

Sentence.

March, 1916, and pay the costs of prosecution; and you are now committed to the trustees of the New Castle County Workhouse until this sentence is executed.