295 P.2d 1019

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Allen WHITE, Defendant-Appellant.**

No. 5986.

Supreme Court of New Mexico.

March 21, 1956.

Rehearing Denied April 24, 1956.

See also, 58 N.M. 324, 270 P.2d 727.

Harry L. Bigbee, Joseph M. Montoya, Matias A. Zamora, Santa Fe, for appellant.

Richard H. Robinson, Atty. Gen., Fred M. Standley, Asst. Atty. Gen., Walter R. Kegel, Asst. Atty. Gen., for appellee.

CARMODY, District Judge.

The defendant appeals from a judgment and sentence of the District Court of Bernalillo County, pursuant to a verdict of a jury finding him guilty of murder in the second degree.

The factual details are of very little consequence insofar as this appeal is concerned, and let it suffice to say that the defendant was convicted of killing his wife by gunshot wound on the 26th of January, 1953, in Albuquerque; that he was thereafter tried and convicted in Bernalillo County of murder in the second degree, which cause was reversed by this Court, resulting in a mandate upon which the present cause was tried.

The defendant on his second appeal to this Court raises several objections to what occurred at the time of trial and in the proceedings before the Court, which can basically be considered under six points.

The first two of these relate to matters which were raised prior to the actual trial, one being a motion for a change of venue, and the second being a motion to quash the Information as supplemented by the Bill of Particulars.

To take these points in the order just mentioned, the defendant filed a motion seeking a change of venue, bolstered by his own affidavit, to which a response was filed by the State, having affidavits attached thereto. The Trial Judge heard testimony on the venue question and denied the motion, apparently feeling that the mere attaching to the motion of the defendant's

affidavit that he did not feel a fair trial could be obtained did not take the matter from the discretion of the Court.

█ Basically, the testimony presented on the motion for change of venue had to do with the widespread newspaper publicity, and we believe, along with the Trial-Judge, that the showing made did not constitute a sufficient showing of a well-grounded fear that the defendant could not obtain a fair trial in Bernalillo County. Certainly, there was no palpable abuse of discretion on the part of the Trial Court in denying the motion. See State v. Alaniz, 55 N.M. 312, 232 P.2d 982; State v. Fernandez, 56 N.M. 689, 248 P.2d 679; and State v. Chavez, 58 N.M. 802, 277 P.2d 302.

Further, with respect to this matter, it might be pointed out that the obtaining of a jury proved relatively easy for a murder case, and it certainly does not appear that the prospective jurors had any prejudice against the defendant and that, actually, basically, the only reason that many of them were subsequently excused for cause was their lack of understanding of the question as to why this defendant should be retried, having been convicted once.

On the morning of the trial, there was filed by the defendant a Motion for a Bill of Particulars to which the District Attorney filed a response and thereafter the defendant moved to quash the Information as supplemented by the Bill of Particulars, on the technical ground that the District Attorney in his Bill of Particulars stated that "the means" of the death of the deceased was "by reason of gunshot wound", whereas the defendant wished to know what the "legal means" was.

█ It should be pointed out that the defendant did not seek an additional Bill of Particulars and did not, insofar as the record discloses, point out to the Court the ground of his technical objection. It must be borne in mind that this was the second trial of this case; the defendant had available a transcript of all of the evidence. There is some doubt as to whether the defendant was actually entitled to a Bill of Particulars, and certainly the granting of the defendant's contention in this instance would, in effect, take the pleading of criminal cases back to the days of the old type Information and Indictment, and would almost completely wipe out the advantages gained by the modern type of pleading.

With reference to this particular point raised by the defendant, it is believed that it is completely answered in State v. Roy, 40 N.M. 397, 60 P.2d 646, 657, 110 A.L.R. 1, wherein this Court stated:

"The defendant here complains of the deficiency of the bill of particulars. He failed to call for a supplemental bill of particulars. This was a voluntary failure on his part and we cannot hear his complaint."

So much for the points raised by the defendant prior to trial; we feel that they are without merit.

The defendant claims error by reason of two different statements made by the District Attorney who prosecuted the case. The first occurred in the District Attorney's opening statement, and the other occurred in closing argument wherein the District Attorney commented on the defendant not taking the stand.

■ With reference to the question raised as to the comment in the opening statement, which was to the effect that the defendant entered into a "purported" marriage with the deceased on the 6th of January, 1947, at which time he was legally married to another woman, objection was made to this by counsel for the defendant in which a mistrial was asked by reason of the injection of a false issue, or in the alternative, that the jury be instructed to disregard the statements. The Trial Judge instructed the Jury in accordance with this request, that the previous marital condition of the defendant was not an issue in the case and the motion for mistrial was denied.

It should also be mentioned that the District Attorney in his closing argument again used the phrase "purported wife" but no objection was raised, and apparently the matter was not brought to the attention of the Trial Court and has only been raised now for the first time. A careful examination of the record in this case discloses that the trial court exercised extreme care in protecting the rights of this defendant, and we fail to be convinced that use of the above mentioned language by the District Attorney had any effect on the jury's verdict, particularly where the Trial Judge acted so promptly to rectify any possible damage that might have been done, in the instance which was called to the Trial Judge's attention. The defendant's motion was in the alternative, that is, either for a mistrial or the admonition to the jury. The Court adopted the latter alternative, as we believe it should have.

It would appear that the action of the Trial Court in this case is analogous to that which occurred in State v. Garcia, 57 N.M. 665, 262 P.2d 233, 235, and we feel that the statement made therein is applicable to the instant cause:

"* * * In view of the prompt action of the trial court when objection was made we do not believe there was prejudicial error so as to justify a reversal of the conviction. * * *"

Also, in his closing argument, the District Attorney commented on the fact that the defendant did not take the stand. His exact words were as follows:

"Exactly what did occur, no one knows. There is only one person who would know what happened at that time, that would be the defendant himself. The defendant did not have to take the witness stand in his own behalf. Had he taken the stand any statements made by him would have been self-serving declarations and only self-serving declarations. Why didn't the

defendant take the stand? We wonder."

We believe that from this Court's standpoint, this question is disposed of entirely by the ruling in the case of State v. Sandoval, 59 N.M. 85, 279 P.2d 850. Insofar as the defendant's contention that this statement was violative of the Fifth Amendment of the Constitution of the United States, it is apparent without quoting at length therefrom, that the Supreme Court of the United States has answered this contention in the case of Adamson v. California, 332 U.S. 46, 67 S.Ct. 1672, 91 L.Ed. 1903, 171 A.L.R. 1223, and it is not believed that long quotations from the above case would be helpful in this opinion. In the above case, the prosecuting attorney argued "that the jury should infer guilt solely from the defendant's silence." The Supreme Court of the United States held that it would not interfere with the conviction by the California Court. The decision, written by Mr. Justice Reed, together with the concurring opinion by Mr. Justice Frankfurter, answers every contention made by the defendant in this cause, wherein the statement is certainly not anywhere near as strong as that made by the prosecuting attorney in the California case.

We now come to matters which occurred at the trial itself as to the admissibility of certain evidence. One of the State's witnesses by the name of Porterfield was questioned with reference to the defendant purchasing a gun in Santa Fe and

giving a false name at the time. This occurred almost immediately prior to the shooting. The defendant contends that this was evidence of deliberation, and that inasmuch as all that the defendant was being tried for was second degree murder, that evidence of deliberation should not have been allowed. It should be pointed out that when this case was originally tried, the defendant was charged with first degree murder. He, of course, was convicted of second degree, and thereby the State was limited to second degree on a second trial.

This same identical testimony was adduced at the first trial and for the defendant to now claim that its only purpose was to show deliberation is stretching a point considerably. It would occur to the Court that this testimony also shows premeditation, which is a necessary element in the proof of murder in the second degree. The testimony was also pertinent to show malice, and the identity of the gun. For the defendant to contend that it was merely for the purpose of showing deliberation, and thereby to inflame the jury, is ingenious, but is not in accordance with the law. The State still had the burden of proving its case beyond a reasonable doubt, and this evidence was a necessary part of the State's case, even to the proof of murder in the second degree.

We now come to the defendant's sixth and last contention, which relates to the Trial Judge having allowed the testimony of a witness in the first trial to be read to

the jury in the instant case. At the time of the first trial, with other counsel representing the defendant, a witness was called by the State—Dr. Miller, who is a neuro-surgeon in Albuquerque. Dr. Miller testified to giving defendant an electroencephalogram; he was not qualified as a psychiatrist, but his testimony was to the effect that from a total of his examination of the defendant, the defendant impressed the Doctor as being sane.

■ No objection was made to the testimony at the first trial, but very serious objection was made to the same at the time of the reading of Dr. Miller's testimony to the jury, inasmuch as he was unavailable at the time of the trial of the instant case. We are of the opinion that the testimony of Dr. Miller was admissible, even though he was not qualified as an expert, under the authority of Territory v. McNabb, 16 N.M. 625, 120 P. 907. Actually, the objection to Dr. Miller's testimony should only go to the weight thereof, and not to its admissibility. The jury as reasonable men, having heard his testimony read and knowing the extent of his contact with the defendant, were able to reasonably judge what weight to give to the testimony, and we fail to see where the defendant was prejudiced in anywise.

■ Of course, actually, the principal question involved in this phase of the case relates to what can be done as to the reading of testimony at a former trial, and whether it must be taken exactly as it was given, or whether objections and deletions may be made therefrom. As to this, the matter is discussed in various texts, and we believe that the better rule is that which is given in 1 Wigmore on Evidence, 3d Ed. § 18, p. 330, as follows:

"A failure to object at one trial precludes the opponent at any subsequent trial from any further objection, for the reason and to the extent that a failure to object before (at) the first trial would have precluded him. * * *" (Parenthetical word added by us)

It should be pointed out that unless such a rule is adopted in this State, that the right to use testimony given at former trials could become, to all intents and purposes, a useless thing. Even in cases where the same counsel is participating in a second trial, he can always think of a great many objections which he did not voice at the time of the first trial. To allow him to now conjure objections to questions at his leisure, could cause sufficient changes to destroy the entire effect of testimony theretofore given.

Even at best, the use of testimony given at a former trial is not too impressive to a jury, and to allow it to become interspersed with new objections, deletions, possible new rulings by the Court, would reduce its value manyfold. Therefore, it is felt that the rule above announced is infinitely superior to the rule in force in some other jurisdictions, wherein objections as to competency, relevancy or materiality are allowed, but no objections are allowed as to the form in

which testimony is elicited or given. Such a rule, in effect, requires the Court to reconsider each case on its own merits, and it is felt that the broad rule such as that above announced is superior.

It follows from what has been said that the judgment should be affirmed.

It is so ordered.

·COMPTON, C. J., and LUJAN, SADLER and McGHEE, JJ., concur.