STATE *v.* BARGER

[No. 46, September Term, 1965.]

■■■■■■■■■■

*Decided April 20, 1966.*

*Dissenting opinion filed June 8, 1966.*

■■■■■■■■■■

The cause was argued before PRESCOTT, C. J., and HORNEY, MARBURY, OPPENHEIMER, BARNES and McWILLIAMS, JJ.

*John W. Sause, Jr., Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General,* and *Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* on the brief, for the appellant.

*William H. Meserole,* with whom were *Joseph A. DePaul, Glenn B. Harten* and *Joseph C. Sauerwein* on the brief, for the appellee.

HORNEY, J., delivered the majority opinion of the Court. MARBURY and BARNES, JJ., dissent. Dissenting opinion by BARNES, J., at page 628, *infra.*

Leslie Barger was indicted for murder and at a trial before a jury was found guilty of murder in the second degree but was acquitted of murder in the first degree. The conviction was appealed and this Court, in *Barger v. State,* 235 Md. 556, 202 A. 2d 344 (1964), reversed the judgment and remanded the case for a new trial because the trial court erred in denying an advisory instruction with regard to the right of the accused to assert the defense of self-defense.

When, following the remand, the State indicated that it intended to retry the accused as if he were being tried for the first time, he moved to dismiss the indictment on the ground that he would be prejudiced by being placed in jeopardy again under the indictment charging him with first degree murder of the victim after he had already been acquitted of that crime.

618

The lower court, relying in part on the decisions of the federal courts, including the Supreme Court, and the dissenting opinion [1] in *Rowe v. State*, 234 Md. 295, 310, 199 A. 2d 785, 793 (1964), concluded that a question of double jeopardy had been raised and granted the motion to dismiss the indictment "as to murder in the first degree."

The question then on this appeal is whether the fact situation presents a case of double jeopardy against which protection should be granted. The accused contends that it does and the trial court agreed but the State contends that where the accused appeals a prior conviction the granting of a new trial nullifies the entire first trial and permits a retrial of the accused on the offenses of which he was found not guilty as well as those of which he was formerly acquitted.

### The Principle of Double Jeopardy

That the "state" could not twice put a man in jeopardy for the same offense after an acquittal at a regular trial on an adequate indictment was well established at common law. 2 Hawkins, *Pleas of the Crown*, 515 (8th ed. 1824) ; 2 Hale, *Pleas of the Crown*, 240-50 (1st Am. ed. 1847). In 4 *Blackstone's Commentaries*, it is said at p. 335 :

> "[T]he plea of *autrefoits acquit*,[2] or a former acquittal, is grounded on this universal maxim of the common law of England, that no man is to be brought into jeopardy of his life more than once for the same offence. And hence it is allowed as a consequence, that when a man is once fairly found not guilty upon any indictment or other prosecution, before any court having competent jurisdiction of the offence, he may plead such acquittal in bar of any subsequent accusation for the same crime."

---

1. Ordinarily it is unsound to give "great weight" to a dissenting opinion.

2. *Autrefois acquit* is defined as a plea in bar to a criminal action, stating that the defendant has been once already indicted and tried for the same alleged offense and has been acquitted. Black, Law Dictionary (4th ed. 1951).

This basic common law principle was incorporated in the Fifth Amendment to the Constitution of the United States[3] and the constitutions of most of the states, Maryland being one of the notable exceptions. However, even though there is no provision in the State Constitution prohibiting double jeopardy, protection against it is available in this state by way of the common law. See *Ford v. State,* 237 Md. 266, 269, 205 A. 2d 809 (1965); *Wampler v. Warden,* 231 Md. 639, 645, 191 A. 2d 594 (1963); *Bennett v. State,* 229 Md. 208, 212, 182 A. 2d 815 (1962); *Moquin v. State,* 216 Md. 524, 528, 140 A. 2d 914 (1958); *Eggleston v. State,* 209 Md. 504, 513, 121 A. 2d 698 (1956); *State v. Adams,* 196 Md. 341, 344, 76 A. 2d 575 (1950); *Robb v. State,* 190 Md. 641, 650, 60 A. 2d 211 (1948).

In an early case—*Hoffman v. State,* 20 Md. 425 (1863), where a jury, after being sworn and charged to try the accused was dismissed because the witnesses did not appear, and, on the second trial, the accused was convicted and sentenced—our predecessors, in adopting the interpretation of the United States' Courts that the Fifth Amendment clause stating that no person shall be "subject for the same offense to be twice put in jeopardy" (being a 'maxim imbedded in the very elements of the common law') meant nothing more than "that where there had been a final verdict either of acquittal or conviction, on an adequate indictment, the defendant could not be a second time placed in jeopardy for the particular offense," held that the accused, not having been twice put in jeopardy, was not entitled to be discharged. And in *Gilpin v. State,* 142 Md. 464, 121 Atl. 354 (1923), it was said at p. 466:

> "That no person shall, for the same offense, be twice put in jeopardy, is both a provision of the Constitution of the United States, and an established rule of the common law, and a plea of former jeopardy is good under either. The rule forbids a second trial for the *same offense* whether the accused at the former trial was acquitted or convicted."

It is also interesting to note at the outset that the Supreme

---

**3.** "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb * * *."

Court of the United States, applying the Fifth Amendment in a District of Columbia case—*Green v. United States,* 355 U. S. 184 (1957)—to a factual situation similar to that in the case at bar reached a different result from that here advocated by the State. In the *Green* case, where the verdict of second degree murder was silent as to murder in the first degree and the defendant, on retrial under the original indictment, after the denial of a plea of second jeopardy, was convicted of first degree murder and sentenced to death, it was held that double jeopardy precluded the second prosecution.

While there is at present no question that the decision in *Green* does not control our decision in this case, there is some doubt as to whether or not the same result would be reached by the Supreme Court in a state case similar to *Green* through the application of the due process clause of the Fourteenth Amendment.[4]

Prior to the adoption of the Fourteenth Amendment there was not the slightest doubt that the first eight amendments (often referred to as the "Bill of Rights") applied to and limited the power of the federal government but were not applicable to the states. See *Harris v. State,* 194 Md. 288, 71 A. 2d 36 (1950). Since the adoption of the Fourteenth Amendment, however, it has been held from time to time—more frequently in recent years than before—that under the due process clause of that amendment certain basic or fundamental rights, some of which are specifically contained in the Bill of Rights, are protected from violation by the states.

### Trend of Federal Cases Under Fourteenth Amendment

In *Palko v. Connecticut,* 302 U. S. 319 (1937), it was contended that the Fourteenth Amendment made all of the specific guarantees of the Bill of Rights applicable to the states, but the Supreme Court rejected that idea and stated instead that certain of the privileges and immunities of the Bill of Rights had been taken over and brought within the Fourteenth Amendment by a process of absorption, namely, those that protect the

---

4. "[N]or shall any State deprive any person of life, liberty, or property, without due process of law * * *."

"fundamental principles of liberty and justice which lie at the base of all our civil and political institutions." In *Palko,* the defendant was indicted and tried for first degree murder and the jury returned a verdict of murder in the second degree. The State, alleging a prejudicial error of law, appealed the conviction. On appeal the conviction was reversed and a new trial was ordered. At the second trial, the objection of the defendant that he was being placed in jeopardy twice for the same offense in violation of the Fourteenth Amendment was overruled and the jury returned a verdict of murder in the first degree. The Supreme Court, in affirming the second conviction, stated that the lack of protection afforded by the State of Connecticut against double jeopardy in such circumstances did not violate a "principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental."

Ten years after *Palko* the Supreme Court was again confronted with the question of whether a defendant was entitled to constitutional protection from state action because he had been twice placed in jeopardy. In *Louisiana ex rel. Francis v. Resweber,* 329 U. S. 459 (1947), involving an unsuccessful execution and the desire to try again, four of the justices concluded that there was "no double jeopardy here which can be said to amount to a denial of federal due process in the proposed execution." Justice Frankfurter, concurring to form the majority, stated that "the Due Process Clause * * * expresses a demand for civilized standards which are not defined by the specifically enumerated guarantees of the Bill of Rights [in that they] * * * neither contain the particularities of the first eight amendments nor are they confined to them" and concluded that the state action in that case did not offend a principle of justice rooted in the tradition and conscience of the people.

The question of double jeopardy was raised again in *Gryger v. Burke,* 334 U. S. 728 (1948), by a petitioner who was convicted of being a multiple offender and was sentenced to life imprisonment in a state court. Again, the Supreme Court instead of saying that constitutional protection could not be invoked against the states in some cases of double jeopardy, decided that double jeopardy was not involved. Five years later

in *Brock v. North Carolina,* 344 U. S. 424 (1953), where a motion for a mistrial was granted after witnesses for the state refused to testify, the Court answered the claim of the petitioner that his retrial amounted to double jeopardy by saying: "the pattern here * * * does not deny the fundamental essentials of a trial, 'the very essence of a scheme of ordered justice,' which is due process." Again the Court, although not rejecting the idea that due process imposes some limitations on the power of a state to reprosecute an individual for the same crime, restated the basic questions asked in *Palko v. Connecticut, supra*:

> "Is that kind of double jeopardy to which the statute has subjected him a hardship so acute and shocking that our polity will not endure it? Does it violate those fundamental principles of liberty and justice which lie at the base of all our civil and political institutions?"

and, in answering the questions in the negative, said:

> "As in all cases involving what is or is not due process, so in this case, no hard and fast rule can be laid down. The pattern of due process is picked out in the facts and circumstances of each case."

*Hoag v. New Jersey,* 356 U. S. 464 (1958), and *Ciucci v. Illinois,* 356 U. S. 571 (1958), involved the problems of successive prosecutions by the two states of several robberies in the first case, and homicides, in the second, arising out of single occurrences. In these cases, the Court recognized that the Fourteenth Amendment does impose some limitations on the state in the area of double jeopardy, but stating that "the question in any given case is whether [the course followed] has led to fundamental unfairness," refused to grant constitutional protection from the states' actions because there was no showing that due process had been violated.

More recently, in *Bartkus v. Illinois,* 359 U. S. 121 (1959), where a state prosecution followed an acquittal in a federal district court for the same offense—robbing a federally insured savings and loan association—a majority of the Court acknowledged the fact that the attack on the constitutionality of the state's action rested on the due process clause of the Fourteenth

Amendment since that clause "does not apply to the States any of the provisions of the first eight amendments *as such*," but based their decision on the premise that crimes committed by the same act against two sovereignties were different crimes. The Court, however, at p. 127 of 359 U. S., quoted the statement of Justice Cardozo in *Palko v. Connecticut, supra*:

> " 'In these and other situations immunities that are valid as against the federal government by force of the specific pledges of particular amendments have been found to be implicit in the concept of ordered liberty, and thus, through the Fourteenth Amendment, become valid as against the states.' 302 U. S., at 324-325."

and concluded that "decisions under the Due Process Clause require close and perceptive inquiry into fundamental principles of our society."

While the Supreme Court has yet to decide that reprosecution by a state of a person for the same crime has transgressed the limitations imposed by the due process clause of the Fourteenth Amendment,[5] there would seem to be little doubt as to what the Court will do where, in its opinion, the power of a state to prosecute violates some "principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." 302 U. S., at p. 325. The United States Sec-

---

5. The Supreme Court of the United States has recently granted certiorari in an Indiana case where the defendant was originally tried for involuntary manslaughter and reckless homicide, and, after being convicted of the latter only and obtaining a new trial, was subsequently retried on both charges. On the appeal of the defendant contesting the validity of the second trial, the Supreme Court of Indiana, in denying the appeal, held that the "federal standard of double jeopardy * * * [cannot] be deemed so fundamental a concept of ordered liberty as to compel a total revision of state interpretation of the doctrine." See Cichos v. State, 208 N. E. 2d 685; Same, 210 N. E. 2d 363; No. 850 Cichos v. Indiana, 34 U. S. Law Week 3339 (4-4-66). The questions the Supreme Court of the United States will consider are: (1) Is the Fifth Amendment's protection against double jeopardy of such basic characteristic in law as to be immune, under the Fourteenth Amendment, from state encroachment? (2) Should Palko v. Connecticut, 302 U. S. 319, be reconsidered and overruled?

ond Circuit Court of Appeals, however, had no difficulty holding that the State of New York had deprived an accused of his liberty without due process of law in *United States ex rel. Hetenyi v. Wilkins,* 348 F. 2d 844 (1965), *cert. den.* 34 U. S. Law Week 3285 (U. S. Feb. 21, 1966), when the state tried the accused a third time on the same indictment after he had previously been tried twice for first degree murder and had won reversal of both convictions (one for second degree murder and the other for first degree murder) for errors committed during the respective trials was again convicted of first degree murder at the third trial.

Whether or not protection is afforded to Leslie Barger under the due process clause of the Fourteenth Amendment is a question we do not reach since we think this case raises a question of double jeopardy which is controlled by Maryland law.

### Maryland Rule With Regard To Double Jeopardy

While some aspects of the principle of double jeopardy have been considered in several other cases, three—*State v. Shields,* 49 Md. 301, *Cochran v. State,* 119 Md. 539, 87 Atl. 400, and *State v. Rosen,* 181 Md. 167, 28 A. 2d 829—will be sufficient to illustrate the effect of the common law rule as it has consistently been applied in this State.

In *State v. Shields, supra,* decided in 1878, no objections were made to the indictment for forgery and the accused plead not guilty. He was acquitted by a jury at a regularly conducted trial, at which the State had excepted to the admissibility of certain evidence. On the appeal by the State, where the only question was whether the exceptions were properly before the Court, it was said at p. 303 :

> "It has always been a settled rule of the common law that after an acquittal of a party upon a regular trial on an indictment for either a felony or a misdemeanor, the verdict of acquittal can never afterward, on the application of the prosecutor, in any form of proceeding, be set aside and a new trial granted, and it matters not whether such verdict be the result of a misdirection of the judge on a question of law, or of a misconception of fact on the part of the jury."

In *Cochran v. State, supra,* decided in 1913, the defendant was tried on a ten-count indictment for violating the election laws and was acquitted under eight but was convicted under two of the counts. He appealed and this Court, in reversing the judgment and awarding a new trial, had this to say, at p. 544:

> "It must be borne in mind, that we are now dealing exclusively with the ninth and tenth counts of the indictment, upon the traverser's appeal. He was acquitted upon the other counts of the indictment, and as was said by this Court in *State v. Shields,* 49 Md. 301, that after an acquittal of a party upon a regular trial on an indictment for either a felony or misdemeanor the verdict of acquittal can never afterward be set aside and a new trial granted and it matters not whether such verdict be the result of a misdirection of the judge on a question of law or a misconception of fact on the part of the jury."

While this broad language is possibly subject to some limitations, such as where some counts in an indictment merge into others, we do not reach any such questions in this appeal, and, therefore, leave them open.

Again, in *State v. Rosen, supra,* decided in 1942, where the defendants had gone to trial on an indictment charging them with violating the gambling laws and during the course thereof moved to quash a search and seizure warrant that had been issued without probable cause, the court granted the motion and, when the State admitted that it was impossible to proceed without the evidence it had seized in the search, the defendants were found not guilty. On appeal, the State contended that there had been no trial on the merits and that the defendants had not actually been placed in jeopardy, but this Court, citing *Shields* and *Cochran,* both *supra,* dismissed the appeal because the State had no right of appeal in a criminal case where the accused had once been acquitted and discharged on a valid indictment.

The rule to be applied to the facts of this appeal is that where there has been a regular trial on a valid indictment and a finding of not guilty of murder in the first degree the accused can-

not thereafter be tried again at the instigation of the State for the offense of first degree murder.[6] This does not mean, however, that the accused cannot be retried for second degree murder or manslaughter.

The rules of criminal procedure have enlarged the right of the State to appeal adverse rulings in many respects,[7] but, regardless of which party appeals, there is nothing in such rules indicating that an accused may be retried for the same offense of which he had been acquitted at the original trial upon remand of the case for a new trial. On the contrary, while Rule 772 states that the provisions of Chapter 800 (Appeals to the Court of Appeals) shall govern in a criminal case to the extent that the provisions therein are not inconsistent with the Rules in Chapter 700 (Criminal Causes), Rule 701, concerning the purpose and construction of Chapter 700, besides providing, among other things, that the criminal rules "shall be construed to secure simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay," specifically states that "failure to set forth in this Chapter [700] any provision of common law or statute, not inconsistent with the rules in this Chapter [700], shall not be construed as an implied repealer thereof."

The State, relying on *Hobbs v. State,* 231 Md. 533, 535, 191

---

6. While the case of State v. Mariana, 174 Md. 85, in which the Court of Appeals actually entertained an appeal by the State, appears to be an exception to the rule, the case does not constitute a precedent permitting such an appeal because the defendant, having failed to move for dismissal, the propriety of the appeal was not in issue. The case was distinguished for this reason in State v. Adams, 196 Md. 341, and distinguished for another reason in State v. Rosen, 181 Md. 167. See the case note, entitled "Appeals By The State," in 12 Md. L. Rev. 68, 70.

7. Prior to the effective date of Chapter 700 (Criminal Causes) on January 1, 1962, the rule was that the State had a right to appeal only when the rulings on a demurrer to the indictment or other pleadings were adverse to the State *or* when the accused, having been convicted, appealed, in which case the Court was required to notice the exceptions the State had also taken concerning the offense appealed from by the accused. See State v. Rosen, 181 Md. 167; Gilpin v. State, 142 Md. 464; State v. King, 124 Md. 491; Cochran v. State, 119 Md. 539; State v. Shields, 49 Md. 301.

A. 2d 238, 239 (1963), *cert. den.* 375 U. S. 914 (1963), contends that at a new trial "the court hears the case as if it were being tried for the first time, and considers the entire matters of verdict, judgment and sentence as if there had been no prior trial." We do not agree. The situation in *Hobbs,* where the defendant was awarded a new trial (by a federal court) on three charges of armed robbery of which he had been convicted (by a state court) because the original trial was not a regular one in that the defendant was tried without benefit of counsel, is not comparable to the situation in the first *Barger* case (235 Md. 556), where the defendant was acquitted of first degree murder but was found guilty of murder in the second degree and, having appealed the conviction of the lesser grade of homicide, was granted a new trial because the instructions to the jury were not proper. Stated otherwise, the cases are distinguishable because the accused in *Hobbs* was charged with the same robberies of which he had been convicted at the first trial, whereas the accused in *Barger* (had he not protested) would have been charged at the second trial with the grade of homicide of which he had been acquitted as well as the grade of homicide of which he had been convicted. But even if the cases were indistinguishable, the result would be the same, for, under the circumstances of this case, the rule with respect to double jeopardy is such as to preclude a retrial of the defendant at the instigation of the State for murder in the first degree. *State v. Rosen, Cochran v. State* and *State v. Shields,* all *supra.* As is evident, the Maryland rule is not out of line with the trend of the federal cases.

The further contention of the State that the appeal by the defendant in the first *Barger* case from his conviction of second degree murder had the effect of waiving the question of double jeopardy, or barring a plea to that effect, as to the charge of first degree murder of which he was acquitted, based on the premise that the granting of a new trial completely nullified the prior trial, is not only unreasonable under the circumstances of this case, but is not supported by the cases in this and other states. The contention is unreasonable (a) because to hold that the appeal and consequent granting of a new trial constituted a waiver would be inconsistent with the fact that

the defendant sought only to reverse so much of the verdict as supported his conviction of second degree murder and (b) because the opening of the whole case for reconsideration would place too great a price on the right of an accused to appeal.

Under the facts and circumstances of this case, we hold that the acquittal of the defendant of murder in the first degree at the original trial is a bar to his retrial for that offense at the new trial for second degree murder and manslaughter : to hold otherwise would be against the principles of fundamental justice. As a consequence, it follows that the appeal and granting of the new trial did not have the effect of waiving the question of double jeopardy as to first degree murder. Such of the prior decisions of this Court as are inconsistent with this holding are hereby overruled to the extent of the inconsistency.

Since the order of the lower court limiting its dismissal of the indictment to the offense of murder in the first degree had the effect of declaring that the indictment was a valid one in all respects as to the offenses of murder in the second degree and manslaughter, there is no reason why the defendant should not be informed by the clerk that he is charged with second degree murder and in the alternative with manslaughter instead of being formally arraigned on the indictment. See Rule 719.

We specifically limit the holding herein to the facts of this case. While we recognize that many questions may arise concerning double jeopardy, we believe they can best be dealt with on a case to case basis.

*Order affirmed; Prince George's County to pay the costs.*

MARBURY and BARNES, JJ., dissent.

BARNES, J., filed the following dissenting opinion.

I dissent in this case because in my opinion the majority of the Court has made an unwarranted and untimely departure from the legal principle enunciated by the Court in *Hobbs v. State,* 231 Md. 533, 191 A. 2d 238 (1963), cert. den., 375 U. S. 914, 84 S. Ct. 212, 11 L. Ed. 2d 153 (1963).

In *Hobbs,* the federal courts had held that because the defen-

dant in that criminal case, who had pleaded guilty to three charges of armed robbery with a deadly weapon, was not represented by counsel in the original trial, that trial was a nullity as denying the defendant due process of law under the Fourteenth Amendment and gave the State seven days to elect to retry the case. See *Hobbs v. Pepersack*, 301 F. 2d 875 (4th Cir. 1962) and *Hobbs v. Pepersack*, 206 F. Supp. 301 (D. Md. 1962). The State elected to have a new trial, the defendant this time pleaded not guilty to the three indictments for armed robbery, was found guilty by the jury on two of the three indictments and the trial court sentenced the defendant to 20 years in one case *and* to 5 years in the other case, the sentences to run *consecutively* from the date of the original sentences, thus sentencing the defendant to 5 more years imprisonment than he had received at the end of the first trial. In affirming the trial court, Judge Marbury aptly stated for the Court in a unanimous decision:

> "On a trial de novo the court hears the case as if it were being tried for the first time, and considers the entire matters of verdict, judgment and sentence as if there had been no prior trial. * * *
> "In asking for and receiving a new trial, appellant must accept the hazards as well as the benefits resulting therefrom." (Pages 535 and 536 of 231 Md.; pages 239 and 240 of 191 A. 2d).

Although *Hobbs* applied this legal principle only to the increased sentence imposed at the end of the new trial (the only question before the Court), that principle has been applied by many state appellate courts and by the Supreme Court of the United States for over fifty years as resulting in an absolute waiver by the defendant of double jeopardy protection for an acquittal for a greater offense, when, on the defendant's appeal, a *reversal* was obtained of the conviction of a lesser offense. The verdict in the first trial was considered an indivisible entity and in taking an appeal the defendant cannot stand on part of the verdict and judgment and repudiate the rest of the verdict and judgment. *United States v. Frank*, 8 Alaska 436 (1933). (This case might not be valid authority in Alaska today as it was de-

cided in reliance on *Trono v. United States,* 199 U. S. 521 (1905) which was in effect overruled by *Green v. United States,* 355 U. S. 184 (1957)) ; *State v. Thomas,* 88 Ariz. 269, 356 P. 2d 20 (1960) ; *Young v. People,* 54 Colo. 293, 130 Pac. 1011 (1913) ; *Perdue v. State,* 134 Ga. 300, 67 S. E. 810 (1910) ; *State ex rel. Lopez v. Killigrew,* 202 Ind. 397, 174 N. E. 808 (1931) ; *State v. Morrison,* 67 Kan. 144, 72 Pac. 554 (1903) ; *Hoskins v. Commonwealth,* 152 Ky. 805, 154 S. W. 919 (1913) ; *Jones v. State,* 144 Miss. 52, 109 So. 265 (1926) ; *State v. Stallings,* 334 Mo. 1, 64 S. W. 2d 643 (1933) ; *State v. Hutter,* 145 Neb. 798, 18 N. W. 2d 203 (1945) ; *Gibson v. Somers,* 31 Nev. 531, 103 Pac. 1073 (1909) ; *People v. Mc-Grath,* 202 N. Y. 445, 96 N. E. 92 (1911) ; *State v. Robinson,* 100 Ohio App. 466, 137 N. E. 2d 141 (1956) ; *Hamit v. State,* 42 Okla. Crim. 168, 275 Pac. 361 (1929) ; *State v. Gillis,* 73 S. C. 318, 53 S. E. 487 (1906) ; *State v. Kessler,* 15 Utah 142, 49 Pac. 293 (1897) ; *State v. Bradley,* 67 Vt. 465, 32 Atl. 238 (1895).

This was the rule in the federal courts from 1905 when the case of *Trono v. United States,* 199 U. S. 521, 26 S. Ct. 121, 50 L. Ed. 292, was decided until 1957 when *Green v. United States,* 355 U. S. 184, 78 S. Ct. 221, 2 L. Ed. 2d 199 was decided by a five to four decision (Frankfurter, Burton, Clark and Harlan, JJ. dissenting) in which a different rule was adopted by the Supreme Court.[1]

---

1. The opinion of the majority in Green v. United States has received adverse comment in two law review articles. See Mayers and Yarbrough, "Double Jeopardy & Collateral Estoppel," 74 Harvard Law Review 1, at page 27 where it was stated: "The jury, having necessarily found the requisite components of felony murder, in no way impliedly acquitted Green of that crime. Its improper failure to convict was possibly based on the very error from which the defendant appealed. In view of these two considerations, no substantial unfairness is visited upon the defendant which can be considered a constitutional impediment to the common-sense conclusion that, the error having been rectified, all issues whose resolution was possibly tainted should be retried." See also Boches' case note in regard to the Green case, 56 Michigan Law Review 1192 at 1194 where it was stated: "More fundamentally, it is doubtful that due process fairness concepts are relevant at all in this area. Under English common law neither appeal nor retrial was

There are a number of appellate courts which agree with the decision of the majority. See *Green v. United States, supra; Brewington v. State,* 19 Ala. App. 409, 97 So. 763 (1923) ; *Hearn v. State,* 212 Ark. 360, 205 S. W. 2d 477 (1947) ; *Gomez v. Superior Court,* 50 Cal. 2d 640, 328 P. 2d 976 (1958) ; *State v. Naylor,* 28 Del. 99, 90 Atl. 880 (1913) ; *West v. State,* 55 Fla. 200, 46 So. 93 (1908) ; *People v. Carrico,* 310 Ill. 543, 142 N. E. 164 (1923) ; *State v. Smith,* 132 Iowa 645, 109 N. W. 115 (1906) ; *State v. Elmore,* 179 La. 1057, 155 So. 896 (1934) ; *People v. Farrell,* 146 Mich. 264, 109 N. W. 440 (1906) ; *State v. Williams,* 30 N. J. 105, 152 A. 2d 9 (1959) ; *State v. White,* 61 N. M. 109, 295 P. 2d 1019 (1956) ; *State v. Birckhead,* 256 N. C. 494, 124 S. E. 2d 838 (1962) ; *State v. Steeves,* 29 Ore. 85, 43 Pac. 947 (1896) ; *Commonwealth v. Maroney,* 417 Pa. 368, 207 A. 2d 814 (1965) ; *Reagan v. State,* 155 Tenn. 397, 293 S. W. 755 (1927) ; *Bateman v. Commonwealth,* 183 Va. 253, 32 S. E. 2d 134 (1944) ; *State v. Schoel,* 54 Wash. 2d 388, 341 P. 2d 481 (1959) ; *State v. Vineyard,* 85 W. Va. 293, 101 S. E. 440 (1919) ; *Montgomery v. State,* 136 Wis. 119, 116 N. W. 876 (1908).

The appellate authorities in the States are almost evenly divided, although the State trend since *Green* has been toward the views of the majority.

It may be pointed out that even among those States which generally held that the defense of double jeopardy was available, California, prior to 1958, declined to permit the defense where the acquittal below was in regard to a higher *degree* of the crime for which a reversal of conviction of a lesser degree of that crime is obtained on appeal. See *People v. Keefer,* 65

permitted. The framers, however, apparently felt that appeal and retrial should be permitted to the defendant, and this conclusion was generally accepted by the early American cases. It therefore seems probable that the double jeopardy clause was intended to have no application to any case in which the defendant appealed an adverse verdict. The common law prohibition was designed to assure that no man would continually be vexed for the same offense, but when continued vexation is of his own choosing, the constitutional safeguard no longer seems applicable. Precedent, logic, and the interests of society in enforcing its criminal laws would therefore indicate a contrary result in this case."

Cal. 232, 3 Pac. 818 (1884, S. Ct. of Cal.) ; *People v. Superior Court,* 202 Cal. 165, 259 Pac. 943 (1923, S. Ct. of Cal.) ; *People v. McNeer,* 14 Cal. App. 2d 22, 57 P. 2d 1018 (1936, Dist. Ct. of Ap. 2nd Dist.).

The same rule was applied in California prior to 1958 to burglary in the first and second degrees. *Ex Parte Moore,* 29 Cal. App. 2d 56, 84 P. 2d 57 (1938, D. Ct. of Ap. 3rd Dist.) ; and to grand theft and petty theft. *Gomez v. Superior Court,* 158 Cal. App. 2d 297, 322 P. 2d 292 (1958, D. Ct. of Ap. 3rd Dist.).

In *People v. Keefer, supra,* a similar situation to that involved in the case at bar was presented to the Supreme Court of California. The defendant was convicted of murder in the second degree at his first trial. Upon his motion, a new trial was awarded. The trial court instructed the jury at the second trial that the defendant having been found guilty of murder in the second degree, could not be convicted of murder in the first degree in the second trial. The jury found the defendant guilty of murder in the second degree at the second trial. This conviction was reversed on appeal, and the case remanded for a new trial. The trial court was instructed by the Supreme Court of California that the defendant could be tried at the new trial for murder in the first degree. The Supreme Court of California pointed out that the establishment of degrees of murder by the legislature did not create a new crime or different crimes of murder, but that the degree of the crime of murder is addressed to the *quantum* of punishment involved rather than to a separate and distinct crime. The Court stated:

> "In dividing the crime of murder into two degrees the legislature recognized the fact that some murders, comprehended within the same general definition, are of a less cruel and aggravated character than others, and deserving of less punishment. It did not attempt to define the crime of murder anew, but only to draw certain lines of distinction by reference to which the jury might determine, in a particular case, whether the crime deserved the extreme penalty of the law or a less severe punishment." (Page 235 of 65 Cal.; page 820 of 3 Pac.).

This distinction in the California cases prior to 1958 is apparently no longer followed in California as a result of the decision of the Supreme Court of California, by a divided court, in *Gomez v. Superior Court,* 50 Cal. 2d 640, 328 P. 2d 976 (1958), *supra,* which followed the decision of the Supreme Court of the United States in *Green* and reversed *Gomez v. Superior Court,* 158 Cal. App. 2d 297, 322 P. 2d 292, *supra.*

Our predecessors held in 1855 that the Act of 1809, Chapter 138, Section 3 providing for murder in the first degree and murder in the second degree (see Code (1957) Art. 27, §§407 and 411) did not create a new offense. The purpose of the statute was "to discriminate in awarding the punishment." *Weighorst v. State,* 7 Md. 442, 451 (1855). See also *Davis v. State,* 39 Md. 355, 375 (1874) and *Webb v. State,* 201 Md. 158, 93 A. 2d 80, 81 (1952). Maryland is, therefore, committed to the same doctrine as that applied by the Supreme Court of California prior to 1958 and, quite apart from what may be thought to be the proper rule for double jeopardy in regard to different crimes, in my opinion there should be no fragmentation of the single crime of murder, even though it has two degrees for purposes of punishment.

The relevant cases in 1957 are collected in the dissenting opinion of Mr. Justice Frankfurter in *Green v. United States, supra* (see pages 216-218 of 355 U. S.) and also in the Annotation following the report of that case in the American Law Reports entitled "Conviction of lesser offense as bar to prosecution for greater on new trial," 61 A.L.R.2d 1141. See also "Defendant's Waiver of Double Jeopardy by Appealing Conviction for a Lesser Included Offense," 66 Yale Law Review 592 (1957) and the note in 3 Arizona Law Review 287 (1961), reviewing *State v. Thomas,* 88 Ariz. 269, 356 P. 2d 20 (1960), *supra.*

Also of interest is the observation in the dissenting opinion in *Rowe v. State,* 234 Md. 295, 199 A. 2d 785 (1964), cert. den., 379 U. S. 924, 85 S. Ct. 281, 13 L. Ed. 2d 336 (1964), that the majority of the Court in that case had, in effect, denied Rowe, who was found by the jury to be insane at the time of trial but who was also found not guilty of murder in the first degree, but guilty of murder in the second degree, of his possible defense of "double jeopardy". Judge Henderson, for the minority, stated in his dissenting opinion:

"If, as the opinion states, 'for reasons best known to himself, the defendant seems to fear the risk of a new trial,' we should not compel him to assume that risk. Surely, the fear is not irrational or unreasonable. If and when he is brought to trial again, he might well be convicted of murder in the first degree and sentenced to death. If, as the majority holds, the verdict and sentence are nullities, it would appear that a claim of double jeopardy would be fruitless. (We shall revert to this later.) In a second trial years later witnesses vital to the defense might conceivably be dead or unavailable. It is our view that he is entitled to stand upon that verdict and sentence, and that this Court should not deprive him of it, *sua sponte*." (Page 311 of 234 Md.; page 794 of 199 A. 2d).

Later in the dissenting opinion, he stated:

"Here, the error upon which the majority rests its reversal of the judgment and its order which in effect restores the status quo as if there had been no trial cannot be classified as a 'technical' error not affecting 'the substantial rights of the parties.' No more can it be said that the Court gives judgment 'without regard to' that error, whatever its nature. The judgment of reversal is founded on that (unassigned) error, however it may be classified. That it affects substantial rights of at least one of the parties, the appellant, could scarcely be seriously disputed, for the protection against the death penalty (or the permissible alternative of life imprisonment) which the jury's verdict of *not guilty of murder in the first degree,* but guilty of murder in the second degree, gave him, is taken away. In short, a substantial right—quite literally a vital right —is put in jeopardy not by disregarding, but by seizing upon, an error." (Page 315 of 234 Md.; page 796 of 199 A. 2d).

"[F]rom the majority's view of the nullity of the jury's verdict of not guilty of murder in the first degree, but guilty of murder in the second degree, it

seems to follow, as already suggested, that a plea of double jeopardy would be unavailing, even as to murder in the first degree. This is, however, a matter of inference, rather than of direct statement, and the question is a serious one. It has not previously been passed on by this Court, and in comparable situations there is a sharp division of opinion in other jurisdictions. See *Green v. United States,* 355 U. S. 184 (1957) and the catalogue of holdings in other states in Mr. Justice Frankfurter's dissenting opinion (pp. 216-218). Since *Green,* the majority (then 19-17 of the 36 states which had considered the question) has now shifted so as to bar conviction for the major offense charged where the first trial resulted in a verdict of guilty on a lesser offense comprehended in the indictment." (Page 316 of 234 Md.; page 797 of 199 A. 2d).

It seems clear, by inference at least, that the majority of the Court as late as April 7, 1964 was prepared to follow the legal principle enunciated in *Hobbs.*

In my opinion, the legal principle set forth in *Hobbs* is sound, should control the case at bar and should deny to the defendant any defense of double jeopardy to prosecution at the new trial for murder in the first degree.

In the first place, the determination by the Court that the jury was erroneously instructed by the trial court and a new trial must be had, means that the verdict of the jury in the entire case, and the resulting judgment, were erroneous and invalid. The jury's verdict was not *partly valid* and *partly invalid.* It was *all invalid.* The judgment was not valid in part and invalid in part. The new trial was awarded upon the whole case, not upon a part of the case. The case is not to be fragmented, with part valid and part invalid. Still less, as has already been stated, is a single crime to be fragmented by degrees of guilt. The reason for the defense of double jeopardy at common law and in the constitutional and statutory provisions incorporating the common law concept was to prevent the citizen from vexatious criminal prosecutions by the institution by prosecutors of additional prosecutions for the crime for which

the accused had been formerly acquitted or convicted. It was not designed to defeat the principal purpose of the criminal law, which apart from its reformatory effect, is designed to protect society and to prevent crime. When the accused challenges the validity of the verdict and judgment in the case and is successful in that challenge, the prior judgment is a nullity and the case proceeds as if the first trial had never been had. In the case at bar the new trial proceeds upon the original indictment. The mandate of the Court in *Barger v. State,* 235 Md. 556, 202 A. 2d 344 (1964) was "judgment reversed and case remanded for a new trial; costs to be paid by the County Commissioners of Prince George's County." There is nothing in the opinion of the Court or in the mandate in that case to suggest that the new trial was not to be had on the whole case.

As the authorities cited by the majority indicate and as the pleas of *autrefois acquit* and *autrefois convict* themselves suggest, the protection of the citizen is against *double* jeopardy, namely, being tried *again* or *twice* for the same crime. This protection is directed to a *second prosecution instituted by the state* to try the defendant for a crime involved in a *former case.* There is no *double* jeopardy until the first case is finally concluded. This is the rule of the civil law, which applies the doctrine *"ne bis in idem."* See Note 11 on page 1150 of the Annotation in 61 A.L.R.2d.

Secondly, the invalidating of the first "trial" and the proceeding with the new trial results from the act of the defendant, himself. But for his challenge, there would be no new trial in the same case, and the judgment—although erroneous—would become final and would successfully prevent the state from instituting a second prosecution for the same crime. There is to my mind no reason in logic or justice to permit the defendant to maintain that part of the judgment is invalid but, at the same time, assert that the other portion of it is valid and affords him protection. The defendant has the advice of counsel in regard to the problems which would be presented by a reversal of the judgment and it does not seem to me to put any abnormal or unjust burden upon him to determine what his best interest requires so far as an appeal is concerned.

On the contrary, it appears to me that to permit the defen-

dant to avail himself of the favorable part of the judgment and to challenge the unfavorable portion, places the State in an unfair and unjust position both theoretically and practically. This aspect of the matter will be more fully considered later in this opinion.

Thirdly, if the position taken by the majority were logically followed to its final conclusion, the defendant would appear to be put in "double" jeopardy by being tried again for murder in the second degree, the crime for which he was convicted by the jury in the first trial. The defense of double jeopardy applies whether the defendant has been acquitted or convicted. *Hoffman v. State*, 20 Md. 425 (1863). And yet all courts hold that when the defendant's *conviction* is found to be erroneous, he may be "retried" for that crime without being placed in double jeopardy. The same error which led to the reversal was as present in the verdict of acquittal as in the verdict of conviction and there seems to be no logical distinction between the two situations so far as double jeopardy is concerned.

In my opinion, the three prior Maryland cases relied on by the majority—*State v. Shields*, 49 Md. 301 (1878); *Cochran v. State*, 119 Md. 539, 87 Atl. 400 (1913) and *State v. Rosen*, 181 Md. 167, 28 A. 2d 829 (1942)—not only do not contain any *holding* which would require the Court to adopt the rule set forth in the majority opinion in this case, but the *dicta* in those cases rather indicate the contrary. In *Shields* the appeal *by the State* was dismissed as this Court determined that the Act of 1872, Chapter 316 did not give the State the right of appeal when the defendant *had been acquitted* in the trial court. In the course of the opinion, Judge Miller, for the Court, stated as set forth in the majority opinion:

> "It has always been a settled rule of the common law that after an acquittal of a party upon a regular trial on an indictment for either a felony or a misdemeanor, the verdict of acquittal can never afterward, *on the application of the prosecutor,* in any form of proceeding, be set aside and a new trial granted, and it matters not whether such verdict be the result of a misdirection of the judge on a question of law, or of a misconception of fact on the part of the jury." (Emphasis supplied). (Page 302-303 of 49 Md.).

638

The italicized words are the important ones and suggest a different result *if the defendant* obtains a new trial. This is also strongly suggested later in the opinion in *Shields,* where it is stated:

> "The Court of Appeals is required to notice exceptions by the State in criminal cases, on appeals by the State, only in cases where the parties accused have been *convicted,* and have also taken exceptions and appeals. *In such a case, if it shall be found there was error in the rulings excepted to by the accused, so that a new trial can be awarded him, it will then become the duty of this court to consider and determine all the questions raised by the State on its appeal, so that in the new trial the court below can be guided by the judgment of this court on all such questions, as well as on those raised by the appeal of the accused.*" (The word "convicted" is emphasized in the opinion; the remaining emphasis is supplied). (Page 306 of 49 Md.).

In *Cochran,* the first eight counts of the ten count indictment charging offenses under the Primary Election Law as applicable to Baltimore City were of separate and distinct offenses from those charged in the ninth and tenth counts. The defendant was acquitted on the first eight counts and convicted on the ninth and tenth counts. The defendant appealed and it is in this setting that the quotation from *Shields* was made. The State did not and under *Shields,* as well as *Birkenfeld v. State,* 104 Md. 253, 65 Atl. 1 (1906), could not file a cross-appeal, so that the Court quite properly observed that it was *"now* dealing exclusively with the ninth and tenth counts of the indictment, on the traverser's appeal." (Emphasis supplied).

*Rosen* followed both *Shields* and *Cochran* in holding that once the defendant had been found not guilty and judgment duly entered to that effect, *the State* had no right to appeal from that judgment whether erroneously entered or not. This is well settled law in Maryland and elsewhere; it does not help in a solution of the problem which arises *when the defendant appeals and obtains a new trial.*

As already indicated the closest case in Maryland to the case at bar is *Hobbs,* and, although the *holding* in *Hobbs* does not, in my opinion, *require* a decision contrary to that of the majority upon the principle of *stare decisis,* the legal principle applied in *Hobbs* is sound and applicable to the case at bar and should be followed and applied in this case.

I agree with the majority, that the question is not reached of whether or not the defendant is afforded protection under the due process clause of the Fourteenth Amendment. I have the uncomfortable feeling, however, in view of the interesting and comprehensive review of the federal cases—together with the recent and extraordinary decision of the Second Circuit in *United States, ex rel. Hetenyi v. Wilkins,* 348 F. 2d 844 (1965) in regard to which the Supreme Court denied certiorari on February 21, 1966, and the grant of certiorari on April 4, 1966 by the Supreme Court in *Cichos v. State,* 208 N. E. 2d 685 (Ind., 1965), *reh. den.,* 210 N. E. 2d 363 (1965) —that the majority has the thought that *Palko v. Connecticut,* 302 U. S. 319, 58 S. Ct. 149, 82 L. Ed. 299 (1937) is in grave danger of being reconsidered and overruled and that the doctrine of *Green v. United States, supra* (which in effect overruled *Trono v. United States, supra*) would be applied to the States through the due process clause of the Fourteenth Amendment upon some notion that the provision of the Fifth Amendment against double jeopardy is of such a basic character that the failure of a State to apply the federal rule "offends a principle of justice rooted in the tradition and conscience of the people."

It is perhaps a work of judicial supererogation to state how strongly I disagree with the idea that the due process provision of the Fourteenth Amendment in some mysterious but really unexplained way, incorporates various provisions and concepts of the first eight Amendments to the Constitution of the United States and thus provides limitations upon the States by the federal courts which are not within the language of the Fourteenth Amendment, or its purposes and history.

It would seem apparent that when Congress drafted the Fourteenth Amendment and included within Section 1 as a limitation on the power of the States a portion of the Fifth

Amendment in almost the identical language "no person shall be deprived" (Fifth Amendment) "nor shall any State deprive any person" (Fourteenth Amendment) "of life, liberty or property without due process of law" (both Amendments), the intention was to apply *that* limitation to the States and not any of the other provisions of the Fifth or the remaining first eight Amendments. By including this provision, Congress excluded the others both by implication and in view of the express provisions of the Tenth Amendment reserving undelegated powers to the States or to the people. See *Hodges v. United States,* 203 U. S. 1, 27 S. Ct. 6, 51 L. Ed. 65 (1906). The Fourteenth Amendment as well as the Thirteenth Amendment abolishing slavery and the Fifteenth Amendment preventing the States from denying or abridging the right to vote because of race, color or previous condition of servitude resulted from the Civil War and were intended to free the negro slaves and to prevent the States from denying the new freedmen equality of treatment before the law and of an equal right with others to vote. These three amendments are to be construed together (*Hodges v. United States, supra*) and it was contemplated that *Congress* should enforce these amendments by appropriate legislation. The specific power is given Congress to do this in each Amendment. In the Fourteenth Amendment, Section 5 specifically provides: "The Congress shall have power to enforce, by appropriate legislation, the provisions of this article," and an identical provision appears as Section 2 of both the Thirteenth and Fifteenth Amendments. Congress, from time to time, has passed appropriate legislation to enforce these amendments by the various Civil Rights Acts. Congress has never defined due process of law in the Fourteenth Amendment as including, for example, a limitation on the establishment of religion or prohibiting the free exercise thereof as Congress is limited by the First Amendment, yet the Supreme Court in *Cantwell v. Connecticut,* 310 U. S. 296, 60 S. Ct. 900, 84 L. Ed. 1213 (1940) stated that this limitation applied to the States without citing any authority for such a statement and without attempting to justify such an extraordinary extension of federal judicial power over the States by the history or purposes of the Fourteenth Amendment itself. Since that case, the expan-

sion of the concept of "due process of law" in the Fourteenth Amendment has continued at a rapid rate and apparently the end is not yet. This to my mind is not permissible. To make the scope of due process depend upon "fundamental principles of liberty and justice which lie at the base of our civil and political institutions" or a "principle of justice so rooted in the tradition and conscience of our people as to be ranked as fundamental" not only ignores the meaning of the term as generally understood but, in effect, equates the meaning of the phrase with the ideas of fundamental principles of liberty and justice held by five members of the Supreme Court at any given time. However eminent those five justices may be and however desirable their ideas may be thought to be as abstractly considered, I do not think a proper construction of the provisions of Section 1 of the Fourteenth Amendment gives them this awesome power.

If, however, it be assumed, *arguendo,* that the Supreme Court properly exercised this power, does the requirement that the defendant in this case stand trial for murder in the first degree after the reversal by this Court result in a denial by Maryland to the defendant of "a fundamental principle of liberty and justice" so as to come within the purview of the Fourteenth Amendment? As the majority has pointed out, the Supreme Court specifically held in *Palko v. Connecticut, supra,* that it would not. The cases following *Palko* are set forth in the majority opinion and need not be repeated here. Prior to *Palko* and even prior to *Trono,* Mr. Justice Holmes (who concurred in the result in *Trono*) had dissented, (with White, McKenna, JJ.; Mr. Justice Brown also filed a dissenting opinion) from a decision by the Supreme Court holding that federal prosecutors had no right to appeal from a judgment of acquittal in a criminal case in the Phillipine Islands and the second trial after a reversal of the judgment of acquittal was double jeopardy. See *Kepner v. United States,* 195 U. S. 100, 134-137, 24 S. Ct. 797, 49 L. Ed. 114 (1904). Mr. Justice Holmes stated at page 134 of 195 U. S.:

"At the present time in this country there is more danger that criminals will escape justice than that they will be subjected to tyranny. * * * It is more perti-

nent to observe that it seems to me that logically and rationally a man cannot be said to be more than once in jeopardy in the same cause, however often he may be tried. The jeopardy is one continuing jeopardy from its beginning to the end of the cause. Everybody agrees that the principle in its origin was a rule forbidding a trial in a new and independent case where a man already had been tried once. But there is no rule that a man may not be tried twice in the same case."

At pages 135-136:

"It might be said that when the prisoner takes exceptions he only is trying to get rid of a jeopardy that already exists—that so far as the verdict is in his favor, as when he is found guilty of manslaughter upon an indictment for murder, according to some decisions he will keep it and can be retried only for the less offense, so that the jeopardy only is continued to the extent that it already has been determined against him, and is continued with a chance of escape. I believe the decisions referred to to be wrong, * * *."

By the English Criminal Appeal Act, 1907, 7 Edw. 7, c. 23, permitting appeals from sentences in criminal cases, the Court of Criminal Appeals is permitted to *increase* as well as to affirm or reduce the sentence of the defendant. Approximately one-half of the State appellate courts permit the trial on the greater offense at the new trial. Under these circumstances, it is difficult indeed to conclude that to require the defendant to stand trial for murder in the first degree in the case at bar would be a denial by the State of any fundamental principle of liberty and justice. It is clear to me that it would not.

I indicated at the beginning of this opinion that I thought the majority had made an *untimely* departure from the legal principle enunciated in *Hobbs*. The State has stated in its brief and at its argument before us that its inability to try the defendant at the new trial for murder in the first degree would gravely handicap the State in the prosecution of this case. It is quite apparent to me that this will be the case. This is not

the time to weaken the position of the State in its prosecution of unlawful homicide in Maryland. The Uniform Crime Reports for 1964 issued by the Federal Bureau of Investigation on July 26, 1965 give alarming figures in regard to the increase of crime generally in the United States and also in regard to murder and non-negligent manslaughter in the State of Maryland.

A comparison of criminal offenses and the growth of population in the United States with the year 1958 indicates that from 1959 to 1964 criminal offenses increased 58% and the crime rate (the number of offenses per 100,000 population) increased 44%. Of these criminal offenses violent crime increased 40%, while the crime *rate* for crimes of violence increased 27%; crimes against property increased 61% while the rate of property crimes increased 46%. During the period in question, the population increased only 10%. In 1964 the number of willful killings increased 8% over 1963. The national murder rate was 4.8 killings per 100,000 persons in 1964. The 9,250 victims of murder was the highest number since the postwar year of 1946 and the annual increase in murder in 1964 over 1963 represents the sharpest trend for crime in recent years.

During the period in question the Supreme Court of the United States decided four cases which initiated profound changes in criminal law procedures in the United States by imposing on the States through the Fourteenth Amendment, federal rules of exclusion of evidence seized contrary to the provisions of the Fourth Amendment, the necessity of the presence of counsel for the defendant at various stages of the accusatory process and protection against alleged self incrimination in regard to statements made by the accused. These are: *Mapp v. Ohio,* 367 U. S. 643, 81 S. Ct. 1684, 6 L.Ed.2d 1081 (1961); *Gideon v. Wainwright,* 372 U. S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963); *Malloy v. Hogan,* 378 U. S. 1, 84 S. Ct. 1489, 12 L. Ed. 2d 653 (1964) and *Escobedo v. Illinois,* 378 U. S. 478, 84 S. Ct. 1758, 12 L. Ed. 2d 977 (1964). I have seen no studies which attempt to show what effect these decisions may have had upon the extraordinary increase in crime in the United States, but if the certainty of apprehension, conviction and pun-

ishment of criminals acts as a deterrent to criminal activity (as I believe it to be), it seems reasonable to suppose that these decisions have played some part in that increase. Be that as it may, the alarming increase in crime throughout the nation should lead us to decline to weaken further the enforcement of the criminal law.

In addition to the national crime figures, Maryland in 1964 had a very high rate of murder and non-negligent manslaughter. Maryland's rate was 6.7 per 100,000 inhabitants, as compared with the national rate of 4.8. This is more than 100% higher than the rate of Pennsylvania (3.3), New Jersey (3.1) and West Virginia (3.7). It is more than 50% higher than that of Delaware (4.3) and is approximately 46% higher than that of New York (4.6). Only 12 States in the nation have rates in excess of the Maryland rate, i.e., Alabama, Alaska, Arkansas, Florida, Georgia, Louisiana, Mississippi, Nevada, North Carolina, South Carolina, Texas and Virginia, the latter State being only slightly higher (6.8). Surely we should not weaken at this time the State's enforcement of the criminal law in regard to murder.

For all of these reasons, I would reverse the lower court.